**STATE OF GEORGIA, on Behalf of and For the Benefit of the GENERAL ASSEMBLY OF GEORGIA, acting By and Through the CODE REVISION COMMISSION, Plaintiff,**

v.

**The HARRISON COMPANY, a Georgia corporation, and Henry H. Blake, Defendants.**

**Civ. A. No. C82–1058A.**

United States District Court,
N. D. Georgia,
Atlanta Division.

Sept. 27, 1982.

Barry P. Allen, Asst. Atty. Gen., William H. Needle, Sp. Asst. Atty. Gen., Atlanta, Ga., for plaintiff.

Baxter L. Davis, Atlanta, Ga., Peter G. Mack, Alexandria, Va., for defendants.

ORDER

VINING, District Judge.

This action is an outgrowth of the state of Georgia's decision to recodify its statutes into the 1981 "Official Code of Georgia Annotated." The plaintiff has filed a five-count complaint alleging (1) copyright infringement, (2) unfair competition under federal law, (3) unfair competition under the common law and Georgia statutes, (4) deceptive trade practices, and (5) false advertising. The plaintiff has moved for a preliminary injunction, and the defendants have moved to dismiss for lack of jurisdiction, pursuant to Rule 12(b)(1), Federal Rules of Civil Procedure, on the ground that a companion case, *The Harrison Company v. Georgia*, Civil Action No. C82–1039A, is already pending before the court, and have moved to dismiss the four unfair competition counts for failure to state a claim, pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure. This case presents a novel question of first impression, *viz.,* whether a state can copyright a codification of its statutes.

## I. FACTUAL BACKGROUND

Since 1863 the laws of Georgia have been codified on several occasions, the last recodification being in 1933. During this time private individuals and companies have published various editions of these different codes. In 1936 The Harrison Company began publishing unofficial versions of the 1933 codification under the titles "Code of Georgia Annotated," "Georgia Code Annotated," and, beginning in 1971, "Code of Georgia Unannotated."

Recognizing the length of time which had elapsed and the changes in the law and in the organization of state government since the adoption of the 1933 Code and in response to a resolution adopted by the Board of Governors of the State Bar of Georgia (which had established a committee to study the necessity and feasibility of adopting a new official code of Georgia), the Georgia General Assembly, in 1976, created the Code Revision Study Committee to study the need for a recodification of the Georgia code. That committee recommended that not only was a new code needed but also that there should be an official publication of that code with the publication, including the price thereof, being controlled by the state. To carry out the recommendations of this study committee, the General Assembly created the Code Revision Commission in 1977, which was authorized, together with other duties, to select and contract with a publisher to conduct a revision of the 1933 code and the subsequently enacted laws of the state of Georgia.

Following discussions with and presentations by five law publishers, including the defendants, the Code Revision Commission entered into a contract on June 19, 1978, with The Michie Company of Charlottesville, Virginia, to codify, revise, index, print, bind, and deliver according to the directions of the Commission 500 sets of a revised and recodified code of Georgia, which was to be designated as the "Official Code of Georgia Annotated." Both the enabling legislation and the contract with Michie provided that the code was a "work made for hire," pursuant to 17 U.S.C. §§ 101 and 201, and that the state would own the copyright in the code. The contract further provided that The Michie Company was to have exclusive rights to reproduce and distribute the code for a 10-year period extending from the date of publication of the code, with the state reserving the right to authorize computer retrieval systems to utilize sections of the code or cases annotated thereunder.

Immediately following the execution of the contract between the Commission and The Michie Company, the Commission adopted the rules of style that were to be used in the revised code, including a new, three unit numbering system, division of the code into titles, chapters, articles, parts, and subparts, and adoption of rules for capitalization and punctuation.

Following adoption of the rules of style, the Commission submitted them to Michie. The editorial staff of Michie then arranged the statutes into the 53 titles which had previously been selected by the Commission. This was done by actually cutting and pasting copies of the 1933 code as enacted by the General Assembly and all Georgia laws enacted since that time. In addition, statutes enacted prior to 1933 that were inadvertently omitted from the 1933 code were also included.

When the Commission felt that a substantive change to the law had to be made, it caused separate bills to be introduced in the General Assembly to accomplish that change; over 40 of these bills were enacted during the 1980 and 1981 regular sessions of the General Assembly. Other changes in the new code include the resolution of conflicts in the law, the deletion of laws that had been repealed, superseded, duplicated, or judicially declared unconstitutional, the inclusion of language to carry out the various major reorganization acts of state government, and giving effect to the numerous statutes and constitutional amendments that have changed the titles of public officials.

Upon approval by the Commission of the page proofs, The Michie Company printed 500 sets of the code. This manuscript ver-

sion was entitled "Code of Georgia 1981—Legislative Edition." Michie forwarded the 500 sets of this edition of the code to the office of legislative counsel of the Georgia General Assembly, which then distributed the 500 sets throughout the state to certain individuals with the express purpose of seeking comments from the recipients to determine if further revision of the code was necessary prior to the November 1, 1982, effective date of the code.

As foreseen by the General Assembly and the Commission, several changes were necessary in the legislative edition. Those changes resulted in a bill containing over 1,000 changes in the legislative edition being passed by the 1982 General Assembly. These revisions will be incorporated with annotations, notes, and other materials into the Official Code of Georgia Annotated, printed by Michie, which will be available in mid-summer of 1982. On November 1, 1982, the new code will effect the repeal the 1933 code and most prior general laws of the state, with the new code supplanting those general laws.

Pursuant to the contract between the Commission and Michie, The Michie Company, on behalf of the plaintiff, registered the plaintiff's copyright of its legislative edition of the Code of Georgia and received on February 4, 1982, from the Registrar of Copyrights certificate of registration number TXU 86–254. To correct errors in the original copyright certificate, The Michie Company, as permitted by regulations of the copyright office, secured a certificate of supplementary copyright registration, number TXU 87–341, on February 22, 1982.

Apparently the defendants obtained a copy of the legislative edition of the 1981 code, a copy of which was on file in the office of legislative counsel; they proceeded to print and publish two four-volume sets of books incorporating the code of 1981 into its Georgia Code Annotated. Letters were also sent to subscribers of the defendants' Georgia Code Annotated explaining how they sought to incorporate the statutory provisions of the 1981 Official Code of Georgia Annotated into its Georgia Code Anno-

tated. The defendants have published volumes setting out the title headings, chapter headings, and subchapter headings with its own previously used title and chapter headings. The captions for the individual code sections in the defendants' publication are the same captions used in its previously published Georgia Code Annotated or, in the case of new statutory provisions, captions which they have formulated and which differ from the captions used in the Michie publication.

The plaintiffs sent a cease and desist letter to defendant Henry Blake on May 10, 1982. The defendants' counsel responded by letter dated May 19, 1982, in which he denied that the defendants were guilty of any wrongdoing. This complaint was then filed on May 21, 1982.

## II. THE PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

In order to obtain a preliminary injunction a party must demonstrate (1) a substantial likelihood that he will prevail on the merits, (2) a substantial threat that he will suffer irreparable injury if the injunction is not granted, (3) that the threatened injury to him outweighs the threatened harm the injunction may do to the defendant, and (4) that granting the preliminary injunction will not disserve the public interest. *Canal Authority of the State of Florida v. Callaway,* 489 F.2d 567 (5th Cir. 1974). At the very heart of the plaintiff's case is its copyright claim in the 1981 Official Code of Georgia Annotated, for if it does not hold a valid copyright, it cannot show a substantial likelihood that it will prevail on the merits.

■ The courts of this country have long held that neither judicial opinions nor statutes can be copyrighted. *See Wheaton v. Peters,* 33 U.S. 591, 8 Peters, 8 L.Ed. 1055 (1834); *Howell v. Miller,* 91 F. 129 (6th Cir. 1898); *Davidson v. Wheelock,* 27 F. 61 (C.C. D.Minn.1866). The rationale of this rule is set forth in *Building Officials and Code Administration v. Code Technology, Inc.,* 628 F.2d 730, 734 (1st Cir. 1980):

The citizens are the authors of the law, and therefore its owners, regardless of who actually drafts the provisions, because the law derives its authority from the consent of the public, expressed through the democratic process.

Along with this metaphorical concept of citizen authorship, the cases go on to emphasize the very important and practical policy that citizens must have free access to the laws which govern them. This policy is, at bottom, based on the concept of due process.

The state argues that this court should not follow this well-established rule because (1) it is the state, not an individual, which seeks to copyright the statutes and (2) the 1981 code exists only in an unpublished form and will not be published or become law until its effective date of November 1, 1982.

The court recognizes that in most, if not all, cases dealing with the copyrightability of state statutes, it is an individual, not the state, which has sought to obtain a copyright. However, Justice Harland, sitting as a circuit justice, recognized that a state's "ownership" of its statutes does not preclude anyone from publishing those statutes:

> It was suggested in argument that no one can obtain the exclusive right to publish the laws of a state in a book prepared by him. This general proposition cannot be doubted. And it may also be said that any person desiring to publish the statutes of a state may use any copy of such statutes to be found in any printed book, whether such book is the property of the state or the property of an individual. *Howell v. Miller,* 91 F. 129, 137 (6th Cir. 1898).

In *Howell,* the plaintiff had for several years published Howell's Annotated Statutes of Michigan, each volume having been copyrighted by Howell and the work being recognized through act of the Michigan legislature "as evidence of the existing laws thereof, with like effect as if published under and by the authority of the state." However, the state legislature contracted with Miller to recompile existing state statutes, with annotations; the state specified the size of type and kind of paper to be used and even furnished the paper through the Board of State Auditors. The legislature further provided for the number of copies to be printed and specified that the Board of State Auditors would fix the cost of printed volumes. Howell sought to enjoin the publication and distribution of the new compilation, but the circuit court for the Eastern District of Michigan refused to issue the injunction, and this decision was upheld on appeal to the circuit court of appeals. The court of appeals specifically held that laws of Michigan as passed by the state legislature were not copyrightable but were public property.

■ The plaintiff argues that the cases which hold that statutes may not be copyrighted mean only that individuals cannot copyright the statutes. In support of this position the plaintiff points to 17 U.S.C. § 105 which specifically provides that copyright protection is not available for any work of the United States government and argues that if Congress had wanted to preclude states from having copyright protection it should have so provided in the Copyright Act. This court does not hold that copyright protection is not available to the states; the court holds only that states, like individuals, may not copyright what is in the public domain.

The rationale behind the rule that statutes cannot be copyrighted applies with equal force regardless of whether it is the state or an individual who seeks to obtain a copyright in those statutes. The public must have free access to state laws, unhampered by any claim of copyright, whether that claim be made by an individual or the state itself.

The court is unpersuaded by the state of Georgia's argument that it should be able to copyright its statutes so as to insure the accuracy of any publication of its statutes. If the defendants choose to print what the Georgia General Assembly has adopted as the 1981 code (instead of simply reprinting the language found in its prior codifica-

tions), the defendants may do this, and courts may accept citations to that publication. However, anyone citing the defendants' work will do so at his peril if there is any inaccuracy in that publication or any discrepancy between what Michie has published and what the defendants have published. A person takes the same risk, of course, whenever he cites the United States Code Annotated (published by West Publishing Company) or the United States Code Service (published by the Lawyers Co-operative Publishing Company and Bancroft-Whitney Company); since both of these codifications are unofficial, the language in the statutes-at-large (or the official codifications) published by the Government Printing Office would control.

The state also argues that the 1981 Official Code of Georgia Annotated is not in the public domain, since it has never been published. The court finds this argument to be without merit. It is true that the 1981 code as prepared by the Code Revision Committee and Michie has not been published in the publication known as Georgia Laws. However, at Georgia Laws, 1981, page 8, the following language appears:

> The statutory portion of the codification of Georgia laws prepared by the Code Revision Commission and The Michie Company which is on file in the office of the Secretary of State is enacted and shall have the effect of statutes enacted by the General Assembly of Georgia.

This enactment in Georgia Laws has the effect of incorporating by reference the Michie publication on file in the office of the Secretary of State as if those volumes were fully and completely set out in Georgia laws. This enactment by reference had the effect of putting the statutory portion of the codification in the public domain.

Although this court holds that a state may not copyright its statutes, its inquiry does not end there, for the court must determine what is meant by "statutory portion" and whether the title, chapter, and article headings are considered part of the statutes and, if not, whether they may be copyrighted.

The parties do not dispute that actual code sections themselves and the numbering system are part of the "statutory portion." The dispute involves primarily the title names and the chapter and article headings. In the bill enacting the codification, the following language appears:

> The statutory portion of such codification shall be merged with annotations, captions, catch lines, history lines, editorial notes, cross-references, indexes, and other materials pursuant to the contract. . . .

Georgia Laws, 1981, pp. 8, 9.

Since no reference is made in the above language to the title, chapter, and article headings it may be that the General Assembly assumed that such matters were part of the statutory portion. If so, they are in the public domain and not copyrightable. However, even if the court assumes that such matters are not part of the statutory portion of the codification, the court would find no valid copyright. This conclusion is based upon the fact that brief, descriptive language used merely to designate or describe something may not be copyrighted. *Alberto Culver Co. v. Andrea Dumon, Inc.,* 466 F.2d 705 (7th Cir. 1972); *Oxford Book Co. v. College Entrance Book Co.,* 98 F.2d 688 (2d Cir. 1938). Mere labels may not be copyrighted. "To be entitled to a copyright, the article must have by itself some value as a composition, at least to the extent of serving some purpose other than a mere advertisement or designation of the subject to which it is attached." *Higgins v. Keuffel,* 140 U.S. 428, 431, 11 S.Ct. 731, 732, 35 L.Ed. 470 (1891). This court holds that title headings such as "Agriculture," "Banking and Finance," "Conservation and Natural Resources," "Domestic Relations," "Eminent Domain," "Handicapped Persons," "Mental Health," and "Torts"; chapter headings such as "General Provisions," "Relevancy," "Hearsay," "Proof Generally," "Best Evidence Rule," "Parol Evidence Rule," "Authentication of Writings," and "Establishment of Lost Records"; and article headings such as "General Provisions,"

"Admissions," "Confessions," "Competency," "Privilege," "Examination," and "Credibility" are mere descriptions and "have no value separated from the articles [which they describe] and no possible influence upon science or the useful arts." 140 U.S. at 431, 11 S.Ct. at 732.

█ Whether the section headings are copyrightable is a question which this court need not address at this time, since a review of the section headings used by The Harrison Company reveals that these are the same headings which were used in previous editions of Georgia Code Annotated (with only minor revisions in those instances where a rewording of a code section has necessitated rewording the caption). Even assuming that the state of Georgia has a valid copyright in the captions contained in the 1981 Official Code of Georgia Annotated, this court concludes that the defendants have not infringed upon the copyright of those captions in the development and use of their own captions for their publications.

█ The plaintiff also contends that it is entitled to an injunction enjoining the defendants from engaging in unfair competition. The plaintiff's argument, as succinctly stated in its brief, is as follows: "Because the defendants' code is a colorable imitation of the State's Code and is intended to create an impression in the minds [sic] of the public that it is the same as the Official Code and that it will function the same as the Official Code, when in fact the defendants' work lacks such official status, the defendants' activities create a false designation of origin."

The court initially notes that the defendants' code is clearly labeled as originating with them. The court further notes that any confusion as to the status of the defendants' publication as the "official" code is based upon the fact that section 1–1–1 of the 1981 code, as adopted by the General Assembly, specifically provides that the new code may be cited as the "Official Code of Georgia Annotated." Consequently, when the defendants published their version the 1981 code, that version contained section 1–1–1, which stated that the code as

adopted by the General Assembly was the Official Code of Georgia and could be so cited. The defendants have not sought to capitalize upon such confusion, but in their solicitation material have made clear that they have not been designated by the state of Georgia as the "official" publishers of the 1981 code but that they are simply publishing the code as enacted and seeking to incorporate it in their Georgia Code Annotated along with the annotations that have been developed over the years.

The plaintiff also faults the defendants for stating in their advertising material that the 1981 code is merely a "reshuffling of the deck" of the old statutes. The plaintiff argues that such a representation is false, since the new work has corrected errors found in earlier editions of the defendants' Georgia Code Annotated and that the new code "has, among other things, resolved thousands of conflicts in the laws of Georgia, repealed unconstitutional laws and deleted laws which were obsolete." However, section 1–1–2 of the 1981 code specifically provides that the enactment of the code by the General Assembly "is not intended to alter the substantive laws in existence on the effective date of this Code." The primary purpose of the new codification was to rearrange and renumber the statutes as previously enacted by the General Assembly into a meaningful and cohesive order.

A review of the solicitation materials sent out by the defendants convinces this court that the plaintiff does not have a substantial likelihood of prevailing on the merits in its unfair competition claims. This court recognizes, as the parties must, that the "public" to whom these materials have been directed is comprised primarily of lawyers, law librarians, and other persons in law-related fields. With the amount of publicity in the past several years regarding Georgia's enactment of a new code, and announcements issued by the State Bar of Georgia and by the Georgia appellate courts, this court is hard pressed to believe that any prospective buyer and user of Georgia's 1981 code does not know that the

state of Georgia contracted with Michie to publish the new code and that Harrison's code does not have the imprimatur of the state. Attorneys may use either the Official Code of Georgia Annotated as published by Michie or the defendants' new Georgia Code Annotated (which presumably incorporates the 1981 code as enacted by the Georgia General Assembly). However, as pointed out above, attorneys who cite the defendants' publication do so at their peril; in any situation wherein the defendants' compilation differs in any way from statutory provisions as published by Michie, it is the Michie code which is controlling.

Since this court has determined that there is not a substantial likelihood that the plaintiff will prevail on the merits, the court will deny the plaintiff's motion for a preliminary injunction.

### III. THE DEFENDANTS' MOTION TO DISMISS PURSUANT TO RULE 12(b)(1)

■ The defendants contend that since a declaratory judgment action, *The Harrison Company v. Georgia,* Civil Action No. C82–1039A, was filed in this court prior to the case *sub judice*'s being filed and since the state has made no allegations in its complaint in this case beyond those raised in the other case, this court does not have jurisdiction over the instant case. The court finds this argument to be utterly without merit, since the fact that a prior lawsuit is still pending, even if it addresses the same issues, does not deprive a court of jurisdiction over the later suit. Judicial economy might dictate that the court allow only one of the cases to proceed, but such a determination is not based on jurisdictional grounds. Consequently, the defendants' motion to dismiss the complaint pursuant to Rule 12(b)(1) is DENIED.

### IV. THE DEFENDANTS' MOTION TO DISMISS COUNTS 2 THROUGH 5 PURSUANT TO RULE 12(b)(6)

■ The defendants contend that Counts 2 through 5, the unfair competition claims of the plaintiff's complaint fail to state a claim upon which relief can be granted. Although the court has held, for purposes of the plaintiff's motion for preliminary injunction, that the plaintiff does not have a substantial likelihood of prevailing on the merits on these claims, this does not mean that it could not prove some set of facts which would show that it is entitled to relief under these claims. *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Quinonez v. National Association of Security Dealers, Inc.,* 540 F.2d 824 (5th Cir. 1976). The complaint does state a cause of action, and the motion to dismiss must be denied.

### V. SUMMARY

The plaintiff's motion for preliminary injunction is DENIED. The defendants' motions to dismiss pursuant to Rule 12(b)(1) and Rule 12(b)(6) are DENIED.