**RAND McNALLY & COMPANY,**
**Plaintiff,**

v.

**FLEET MANAGEMENT SYSTEMS,**
**INC. d/b/a Logistics Systems,**
**Defendant.**

No. 80 C 4499.

United States District Court,
N.D. Illinois, E.D.

Dec. 31, 1983.

Daniel W. Vittum, Jr., Robert G. Krupka, David L. Witcoff, Kirkland & Ellis, Chicago, Ill., for plaintiff.

David C. Hilliard, Pattishall, McAuliffe & Hofstetter, Chicago, Ill., Richard M. Zinner, Friedman & Atherton, Boston, Mass., for defendant.

## MEMORANDUM OPINION AND ORDER

GETZENDANNER, District Judge:

This action under the Copyright Act of 1976, 17 U.S.C. § 101, *et seq.*, is before the court on the cross motions for summary judgment of plaintiff Rand McNally & Company ("Rand McNally") and of defendant Fleet Management Systems, Inc. d/b/a Logistics Systems ("Logistics Systems"). Since the motions address many of the same issues, they will be disposed of in this one memorandum.

In the first count of Rand McNally's two-count First Supplemental Complaint, Rand McNally claims to have authored and compiled a book containing maps and mileage data entitled the *Standard Highway Mileage Guide* ("*Mileage Guide*").[1] Rand McNally claims that the *Mileage Guide* contains information wholly original to it, authored and compiled by it at great expense, and distributed by it directly and through the private association, the Household Goods Carriers' Bureau ("HGCB"). Rand McNally asserts that it has complied with the provisions of the Copyright Act of 1976, 17 U.S.C. § 101, *et seq.*, and of the Copyright Act of 1909 in securing copyright protection of the 1978 edition of the *Mileage Guide* ("*Mileage Guide 1978*") and "earlier editions." (First Supplemental Complaint ¶ 5.) Rand McNally claims that the *Mileage Guide 1978* received a Certificate of Copyright Registration from the Register of Copyrights, dated March 29, 1978, with registration number TX 31–469. In publishing the *Mileage Guide 1978*, Rand McNally allegedly complied with the provisions of the Copyright Act of 1976 and all other applicable copyright laws.

Rand McNally claims to be the sole owner of all rights, title, interest, and copyright in and to the *Mileage Guide 1978* "and earlier editions" of the *Mileage Guide*. (First Supplemental Complaint ¶ 7.) Logistics Systems allegedly infringed these copyrights by copying, reproducing, publishing, and placing on the market, under the name "Compu.Guide," substantial and important portions of "at least the 1978 *Mileage Guide*." (*Id.* at ¶ 8.) After notification by Rand McNally that it had infringed at least the 1978 copyright, Logistics Systems allegedly continued its infringement, causing Rand McNally to suffer irreparable harm.

Count II alleges in addition that Rand McNally has recently published the 1982 edition of the *Mileage Guide* ("*Mileage Guide 1982*"). With respect to *Mileage Guide 1982*, Rand McNally claims to have complied with all applicable laws governing copyrights and to have received from the

---

1. Rand McNally's action for infringement concerns only the 1978 and 1982 editions of the *Mileage Guide.* When parties refer to a particular edition of the *Mileage Guide,* the court will also refer to that edition. However, for convenience, when referring to the *Mileage Guide* in general, the court will simply indicate "*Mileage Guide.*"

Register of Copyrights a Certificate of Registration dated December 29, 1982, registration number TX 1–021–076. *Mileage Guide 1982* was allegedly published with proper notice and authority as prescribed by the governing copyright laws. Rand McNally claims to be the sole owner and proprietor of the rights, title, interest, and copyright in and to *Mileage Guide 1982*. Logistics Systems is allegedly infringing this latest copyright by utilizing in its "Compu.Guide" important and substantial portions of *Mileage Guide 1982*. This infringement has allegedly continued, despite Rand McNally's notice to Logistics Systems of such infringement. Logistics Systems' conduct allegedly has caused and continues to cause Rand McNally irreparable harm. Rand McNally has attached copies of the Certificates of Registration of the 1973, 1978, and 1982 editions of the *Mileage Guide* to its motion for summary judgment. Count III contains a state claim of unfair competition, before the court on pendent jurisdiction.

As relief for the alleged unlawful behavior of Logistics Systems, as stated in Counts I–III, Rand McNally seeks a preliminary and permanent injunction, an accounting for profits and damages as provided for under "the Copyright Law," (First Supplemental Complaint ¶ 7), punitive damages, deliverance of copies of and portions of "any edition of" the *Mileage Guide* in Logistics Systems' possession, (*id.*), and costs and attorneys' fees.

## I.

*Logistics Systems' Motion for Summary Judgment*

Logistics Systems argues first that summary judgment in its favor is in order as Rand McNally has no valid copyright in the *Mileage Guide* as a matter of law. Logistics Systems points out that the *Mileage Guide* is an Interstate Commerce Commission ("ICC") tariff that, as such, has the force and effect of law. Logistics Systems contends that the *Mileage Guide* may not therefore be validly copyrighted as is the case with judicial opinions and statutes. It

asks for judgment on the pleadings. Count III, Logistics Systems continues, must also be dismissed as preempted by the federal copyright law, 17 U.S.C. § 301(a). Logistics Systems contends that as Count III merely repeats the claims of Counts I and II, it clearly falls within the proscriptions of 17 U.S.C. § 301(a).

Rand McNally counters that its filing of the *Mileage Guide* with the ICC in no way affects its valid copyrights, as tariffs are not equivalent to judicial opinions and statutes. In addition, use by the federal government of copyrighted privately created works does not cause a forfeiture of copyright protection. Additionally, Rand McNally argues that the state claim in Count III steers clear of preemption by the federal statute.

*Rand McNally's Motion for Summary Judgment*

Rand McNally argues that because the undisputed facts show that Logistics Systems extensively copied the 1978 and 1982 editions of the *Mileage Guide* and because it owns a copyright in those editions, summary judgment should be granted it in order to remedy and halt Logistics Systems' infringement. Rand McNally asserts that its copyrights are valid as to the maps and the mileage and other data contained in the *Mileage Guide*. Rand McNally further argues that Logistics Systems' reformatting of the material, from book to computerized data bank form, does not legitimize its infringement. Finally, Rand McNally argues that the *Mileage Guide* is unlike statutes and judicial opinions and is therefore copyrightable.

Responding to this motion, Logistics Systems counters that the *Mileage Guide*, as a derivative work, is comprised of materials original to its own author and to other, unrelated authors. Rand McNally's failure to distinguish between these materials and to highlight what among them are subject to copyright protection, bars summary judgment at this point. Logistics Systems further contends that an issue of fact exists over whether Rand McNally is the

owner of the copyrights in the *Mileage Guide.*

Contending that only the maps in the *Mileage Guide* are copyrightable, Logistics Systems claims the mileages are not copyrightable and hence in the public domain. In any case, Logistics Systems points out that an issue of fact exists over whether it is licensed to use the data in the *Mileage Guide.* Finally, Logistics Systems claims Rand McNally's Certificates of Registration are invalid as containing misstatements, and that Rand McNally's delay in bringing suit raises factual disputes concerning the defenses of laches and estoppel.

## II.

### MAY RAND McNALLY COPYRIGHT THE MILEAGE GUIDE DATA

#### A. COMPILATION OF FACTS.

The *Mileage Guide* contains two different types of matter: maps and mileage and other data. Rand McNally alleges that Logistics Systems infringed its copyright in the 1978 and 1982 editions of the *Mileage Guide* by copying "substantial portions" of these works. However, in so alleging, Rand McNally does not differentiate between the maps and the data. Rand McNally argues in its memoranda that both maps and factual compilations are copyrightable, charging Logistics Systems with infringement of both.

The evidence before the court indicates that Rand McNally is complaining of infringement only of mileage and other data, whether derived from the *Mileage Guide*'s maps or mileage tables. The *Mileage Guide* maps contain mileages marked on the maps, designating the mileages of "Black Mileage Segments" and "Red Mileage Segments." (Winterfeld Aff. ¶ 4.) The data tables of the *Mileage Guide* contain thousands of mileages between so-called "Keypoint" cities. *Id.* Both map

and table data were copied by Logistics Systems. (*E.g.,* Answer to Interrogatory No. 2(b)(ii); 1982 Shapiro Tr. 65, 80, 126; 1983 Rinehart Tr. 12–13.) Other information from the maps, for example, highway, city, and county names, was also copied by Logistics Systems. (*E.g.,* Answer to Interrogatory No. 5(B).) Rand McNally has not presented evidence that Logistics Systems is reproducing actual maps created by Rand McNally. The Compu.Guide product is a computerized mileage system, the data base of which contains bare elementary mileages selected and/or calculated from raw mileage figures found in the *Mileage Guide.* (Shapiro Aff. ¶ 4.)

Both parties have no quarrel with the proposition that a map may be copyrightable. The copying of maps is not at issue in this action. Rather, Rand McNally asserts that the data contained in its *Mileage Guide* maps and tables, most importantly the mileage data, is subject to copyright protection and was in fact copyrighted when Rand McNally obtained its Certificates of Registration for certain editions of the *Mileage Guide.* Correctly pointing out that a copyright in a derivative or collective work does not prove that the protection extends to the entire work, 17 U.S.C. § 103, Logistics Systems argues that the data it derived from the maps and tables of the *Mileage Guide* is not copyrightable.

■ Rand McNally's *Mileage Guide,* consisting of maps and mileage tables, is a "compilation" as that term is defined by the Copyright Act.[2] Protection under the Act for such compilations is set forth in 17 U.S.C. § 103.

> (a) The subject matter of copyright as specified by section 102 includes compilations and derivative works, but protection for a work employing preexisting material in which copyright subsists does not extend to any part of the work in which such material has been used unlawfully.

---

**2.** A "compilation" is a work formed by the collection and assembling of preexisting materials or of data that are selected, coordinated, or arranged in such a way that the resulting work

as a whole constitutes an original work of authorship. The term "compilation" includes collective works.

(b) The copyright in a compilation or derivative work extends only to the material contributed by the author of such work, as distinguished from the preexisting material employed in the work, and does not imply any exclusive right in the preexisting material. The copyright in such work is independent of, and does not affect or enlarge the scope, duration, ownership, or subsistence of, any copyright protection in the preexisting material.

The *Mileage Guide* may also be a derivative work as it contains materials, recast, transformed, or adapted, that may themselves be copyrighted (facts, the subject of compilations, alone are not copyrightable). See discussion of differences between derivative works and compilations in 1 M. Nimmer, *Nimmer on Copyright* § 3.02. For example, Rand McNally admits that it has compiled and verified the information in its *Mileage Guide* from "innumerable non-copyrighted official map sources, Rand McNally's own maps, federal and state agencies, [etc.]." (Rand McNally Memorandum in Support of its Motion for Summary Judgment p. 5.) As maps may be copyrighted, use of such materials may render the *Mileage Guide* a derivative work. (Rand McNally classifies its *Mileage Guide* on its Certificates of Registration as a "compilation or derivative work.")

■ As with a compilation, a derivative work obtains copyright protection only over materials contributed by the author. In order to obtain copyright protection over the preexisting material employed in a derivative work, the author must contribute additional matter to the preexisting work that constitutes more than a minimal contribution to it. Indeed, the contribution to the preexisting work (which, if copyrighted, may not be used without the copyright holder's consent), must render the derivative work "substantially different" from the underlying work. *Gracen v. Bradford Exchange*, 698 F.2d 300, 305 (7th Cir.1983). *See U.S. v. Hamilton*, 583 F.2d 448 (9th Cir.1978) (discussion of contribution to copyrighted map necessary to make new

and changed map protectible by new copyright). Hence, preexisting maps and tables used in the *Mileage Guide* must have been so changed as to constitute an "original work of authorship," before Rand McNally may claim protection for those materials.

Logistics Systems first argues that the *Mileage Guide*'s mileage charts and data are not entitled to copyright protection because they simply set forth charts of facts. Facts being in the public domain, Logistics Systems concludes, a list of facts must also be in the public domain. Such a list is not copyrightable, Logistics Systems concludes.

■ Logistics Systems is correct that, as a general rule, facts, as opposed to their means of expression, are denied copyright protection. *Miller v. Universal Studios, Inc.*, 650 F.2d 1365, 1368 (5th Cir.1981); 1 Nimmer, *Nimmer on Copyright* § 2.11[A], at 2–157 (1983). *Compilations* of facts, however, have "long rested securely within the scope of copyright." Denicola, *Copyright in Collections of Facts: A Theory for Protection of Nonfiction Literary Works*, 81 Colum.U.L.Rev. 516, 527 (1981). *See* 17 U.S.C. § 103; *Schroeder v. William Morrow & Co.*, 566 F.2d 3 (7th Cir.1977).

The rationale behind protecting such compilations, however, is unclear. As one judge in this district explained:

The extent to which compilations are entitled to protection as intellectual property has been and continues to be a troublesome legal issue because it involves consideration of competing interests within the confines of a statutory scheme better suited to other literary works.

*National Business Lists v. Dun & Bradstreet, Inc.*, 552 F.Supp. 89, 91 (N.D.Ill. 1982).

■ The Seventh Circuit has recently held a compilation of names and addresses copyrightable, even though that information can be said to comprise facts in the public domain. *Schroeder v. William Morrow & Co.*, 566 F.2d at 5. In *Schroeder*, the defendant copied and published plaintiff's list of suppliers of gardening informa-

tion and materials. The Court explained that "industrious collection",[3] and not novelty or originality, qualifies the list for protection. *Id.* The Court then discussed the extent to which the time and labor that defendants saved in copying plaintiff's compilation aided them in publishing their rival work at an earlier date than would have otherwise been possible. *Schroeder* has been cited as support for the proposition that "industrious collection" of information in the public domain may qualify for copyright protection. *E.g., National Business Lists v. Dun & Bradstreet, Inc.,* 552 F.Supp. at 94 (list of business names, addresses, and other financial information); *Quinto v. Legal Times of Washington, Inc.,* 506 F.Supp. 554, 559 (D.D.C.1981) (compilation of quotations protected by copyright as "industrious collection"); *see Dow Jones v. Chicago Board of Trade,* 546 F.Supp. 113, 115 (S.D.N.Y.1982) (employs

*Schroeder* as support for proposition that "[s]ome directories are considered original works because of the labor expended in their preparation").[4]

Telephone directories provide a classic illustration of this "labor theory" of protection of factual compilations. *Leon v. Pacific Telephone & Telegraph Co.,* 91 F.2d 484 (9th Cir.1937) (citing *Jewelers' Circular Pub. Co. v. Keystone Pub. Co.,* 281 F. 83, 88 (2d Cir.), *cert. denied,* 259 U.S. 581, 42 S.Ct. 464, 66 L.Ed. 1074 (1922)); *Northwestern Bell Telephone Co. v. Bedco of Minnesota, Inc.,* 501 F.Supp. 299, 301 (D.Minn.1980); *Southwestern Bell Telephone Co. v. Nationwide Independent Directory Service, Inc.,* 371 F.Supp. 900, 905 (W.D.Ark.1974). In *G.R. Leonard & Co. v. Stack,* 386 F.2d 38, 39 (7th Cir.1967), the Court held copyrightable a compilation of

---

**3.** *Schroeder* has been cited, wrongfully according to this court, to support the principle that to be copyrightable, a compilation must show originality in arrangement and selection. *See Signo Trading International Ltd. v. Gordon,* 535 F.Supp. 362, 365 (N.D.Cal.1981). There, the plaintiff's translation and transliteration of a list (of which he was not the author) of 850 words and 45 short phrases was not copyrightable as showing no originality in selection. The court noted that the list of words itself, chosen to form the data bank of a handheld electronic translating calculator, "may be copyrightable if the selection and arrangement of those words embodies the requisite originality." *Id.* at 365. It is true that the *Schroeder* Court discussed the "selection, the ordering and arrangement" of the compilation, but only in connection with the *scope* of the copyright protection and not in connection with the qualities that a compilation must possess to merit the protection in the first place.

**4.** Another justification for protecting compilations of facts relies on the compiler's "subjective judgment and selectivity in choosing items to a list." *Dow Jones v. Chicago Board of Trade,* 546 F.Supp. 113, 115 (S.D.N.Y.1982). The court is aware of two Seventh Circuit opinions that might be seen as accepting this justification for copyright protection. In *Adventures in Good Eating, Inc. v. Best Places to Eat, Inc.,* 131 F.2d 809 (7th Cir.1942), the Court held a directory to good restaurants to be copyrightable, explaining that "[a]ny person may produce a directory of restaurants, but he must 'start from scratch,' do his own collecting, his own appraisal, and his own description and editing." *Id.* at 812–813.

This case was cited in *National Business Lists v. Dun & Bradstreet, Inc.,* 552 F.Supp. at 94, as supporting the "industrious collection" rationale, but by *Dow Jones v. Chicago Board of Trade,* 546 F.Supp. 113, 115, as supporting the exercise of judgment rationale. Its holding is at best ambiguous and at worst in conflict with other more recent decisions in this circuit. The other case, *Gelles-Widmer Co. v. Milton-Bradley Co.,* 313 F.2d 143 (7th Cir.), *cert. denied,* 373 U.S. 913, 83 S.Ct. 1303, 10 L.Ed.2d 414 (1963), allowed copyright protection for flashcards containing mathematical equations and their answers. The Court agreed that the basic arithmetical calculations could not be copyrighted, but continued:

> We do not understand the plaintiff to make any such claim. What the District Court found to be infringed was the selection, arrangements and combinations contained in plaintiff's copyrighted sets. These were more then mere compilations.
>
> Plaintiff agrees that the basic materials and arithmetical problems may have been old and in the public domain, but we agree with plaintiff's argument that the arrangement, plan and the manner in which they were put together by the author does constitute originality.

*Id.* at 147. *Gelles-Widmer* is cited by the *Schroeder* Court, however, in support of its "industrious collection" rationale. Even if the test for copyright protection in this circuit required judgment in selection, Rand-McNally's selection of keypoint and cities, rounding of black and red mileage segments, and determination of "green-outs" (a disputed fact) may indicate the requisite exercise of judgment.

parcel post, express, motor freight, and railroad freight rates comprising over 77,000 entries. The information appears to have been gleaned from source material in the public domain, such as "express tariffs, the official list of railway stations, United States postal bulletins, and road maps." *Id.* at 39. The Court's rationale for this finding was clearly influenced by cases holding that while one may compile a list of facts using one's own labor, to copy another's list and expropriate his labor constitutes unfair use and a violation of a valid copyright. *Id.* None of the above cases disputes one's right to compile a list of facts through one's own labor.

■ In this jurisdiction, therefore, factual compilations, if a result of some level of compiler effort and industry, may be protected by copyright. *See* cases collected in *National Business Lists v. Dun & Bradstreet, Inc.*, 552 F.Supp. at 94. For commentary on this principle *compare* Denicola, *supra*, at 527–535, 540–542 (in favor) with 1 Nimmer, *Nimmer on Copyright* § 3.04 (1983) (against).

■ The evidence now before the court indicates that Rand McNally may show at trial that it spent considerable time and effort in creating and updating the *Mileage Guide*, thereby qualifying for copyright protection because of its industrious collection of facts.[5] Rand McNally presents evidence, for example, that it spent two million dollars compiling the additions and corrections contained in the 1982 edition. It is not clear how much of this expense was directed to updating the maps (not the subject of this suit) and how much to the

mileage tables. It may be that Rand McNally's efforts with respect to the latter component of the *Mileage Guide* were small, not reaching the level of "industrious collection" required for protection. In addition, some of the data on the maps, such as county and town information, may be so accessible through other sources as to involve only trivial compilation efforts by Rand McNally in including such data on the maps. Moreover, much of the information on the maps and tables is derived from public domain sources. Were Rand McNally to borrow heavily from these sources, including using mileage information contained thereon, their efforts in compilation may easily fall below that required to qualify for copyright protection under the "industrious compilation" test. Furthermore, Rand McNally has presented only the Certificates of Registration for the last three editions of the *Mileage Guide*. Those editions may have borrowed heavily from earlier editions. The court has no facts before it indicating that Rand McNally owns the copyrights to those other editions. If they are in the public domain, they are not copyrightable nor copyrighted by virtue of the 1973, 1978, and 1982 copyrights. These materials not being copyrighted, the 1978 and 1982 editions again may not have involved great industry in creation.[6]

As is clear from this discussion, Rand McNally has not shown that its original contributions to the 1978 and 1982 *Mileage Guides* constitute a sufficient effort to qualify for compilation protection. These same open questions render the court hesitant to hold that the *Mileage Guide*'s data is copyrightable when public domain mate-

---

**5.** Logistics Systems contends that because the mileage data in their data base is arranged differently than the data in the Mileage Guides, no infringement could have taken place. In a careful opinion discussing cases that involved use of compilations in different arrangements, a court in this district explained that with respect to electronic compilations, "an emphasis upon arrangement and form in compilation protection becomes even more meaningless than in the past." *National Business Lists v. Dun & Bradstreet, Inc.*, 552 F.Supp. at 97. The change in arrangement here, therefore, does not prevent a finding that Logistics Systems infringed a copy-

right in mileage data, if such a copyright were to be found to exist.

**6.** Were the earlier editions copyrighted, however, Rand McNally need only claim infringement of the most recent edition. It would not be required to allege infringement of all earlier copyrighted editions in order to allege infringement of materials in which copyrights already subsisted. *Rexnord, Inc. v. Modern Handling Systems, Inc.*, 379 F.Supp. 1190 (D.Del.1974); *Williams Products, Inc. v. Construction Gaskets, Inc.*, 206 U.S.P.Q. 622 (E.D.Mich.1977).

rials may have been incorporated therein with insubstantial changes. It is Rand McNally's burden to show that the 1978 and 1982 editions are copyrightable. It is sufficient at this point to find that Rand McNally may prove facts that entitle it to hold a copyright over certain mileage data.[7]

## B. EQUIVALENT OF STATUTE OR JUDICIAL OPINION.

■ Logistics Systems next argues that even if Rand McNally could and does have a copyright in some of the factual compilations of the *Mileage Guide*, the *Mileage Guide* has entered the public domain because used in conjunction with statutorily mandated tariff schedules.[8] Common carriers are required to file tariffs with the ICC that show all of the rates, fares, and charges for transportation between the different points the carrier serves. 49 C.F.R. § 10762. The purpose behind this statute and it regulations is to prevent tariff discrimination. *Aero Trucking Inc. v. Regal Tube Co.*, 594 F.2d 619, 621 (7th Cir.1979). These tariffs must be printed and copies kept open for the public's use. If charges are computed on the basis of the distance between points, that distance must be included in the tariff information. Carriers may provide relevant distance information by referring in the tariff to maps or a distance guide. 49 C.F.R. § 1310.16(d), (e).

The regulations promulgated by the ICC with respect to maps state that no more than three maps may be referred to by a tariff and that each map shall show the territory of not more than one state unless "where not more than three states are commonly grouped and no adequate single-state maps are available from ordinary commercial or government sources." *Id.* at (d)(1). The maps must contain directions for determining distances ("not 'actual'

mileage") between locations covered by the carrier, "regardless of whether all such locations are or are not shown on the maps and regardless of whether actual distances are or are not shown between all locations shown thereon." *Id.* at (d)(2). The regulations, therefore, do not seem to mandate great accuracy in the calculation of distances from maps attached to the tariff.

The regulations also discuss the use of distance guides, such as the *Mileage Guide*, for computing carrier charges:

(e) *When a distance guide is referred to.* (1) Only distance guides officially on file with the Commission may be referred to. More than one may be referred to provide the rate tariff clearly specifies the circumstances under which each guide will apply. All carriers parties to distance rates referring to one or more distance guides must also be parties to each guide referred to. An Agent may refer to a distance guide published in the name of another agent for the account of participating carriers also parties to the guide.

(2) Distance guides shall be constructed on the principle of distance tables or combinations of tables and maps, definitely and clearly indicating distances between the locations covered by the rates referring thereto. Tables must provide specific distances between a substantial number of the points and be shown as having precedence. Each guide must provide rules setting forth the application of the guide. The rules must include a definite means for determining distances (not "actual" mileage) for rate-making purposes between all locations within the territorial coverage of the guide, regardless of whether all such locations are or are not shown between all locations therein. If distances between

7. Since the court does not find that Rand McNally has a copyright in the mileage data, it is not necessary at this time to determine whether Logistics Systems' actions would have constituted infringement of such a copyright. Hence, the court need not determine, for example, whether Logistics Systems was licensed to use some of the mileage data in its data base.

8. Rand McNally at one point commits the often made mistake of considering this issue as governed by § 8 of the 1909 Act and § 105 of the 1976 Act. These provisions deal with works of the United States Government produced by its officers and employees and are hence inapplicable to the case at hand.

certain points or areas are to be determined through a certain gateway or interchange point only, and not by use of the short-line distance as determined from the maps or by use of the tables, the affected origin and destination areas and the gateway or interchange point (limited to one only) in connection therewith must be identified. Distance guides may exceed the maximum size limitation imposed by § 1310.4(a) (rule 4) but may not exceed 14½ by 17½ inches in size. As is apparent from a reading of this regulation, no particular distance guide is required by the ICC, as long as the guide is on file with the Commission. The only regulations governing whether a distance guide may be filed concern the size of the guide, the definiteness of determining mileages, the form of its tables, the inclusion of rules of use, and other specifications addressing more the form than the content of the guide. In short, no particular distance guide or map is required and no particular accuracy is specified. The regulations concerning the determination of distances seems chiefly concerned with achieving the end of the tariff requirement itself, in other words, the assurance that carrier charges are nondiscriminatory. To this end, a charge is calculated on the basis of rates and distances on file with the ICC and accessible to the public.

The *Mileage Guide* is one such distance guide. The HGCB employs the *Mileage Guide* for its members' use. Logistics Systems argues that because shippers and clients whose tariffs refer to it must compute charges with respect to the mileages contained therein, the *Mileage Guide* has the force of law and, like a statute or judicial opinion, is in the public domain and ineligible for copyright protection.

In support of this proposition, Logistics Systems cites several opinions finding that ICC tariff publications have the force of law. *E.g., Atchison, Topeka and Santa Fe Railway Co. v. Bouziden,* 307 F.2d 230, 234 (10th Cir.1962). Carriers and shippers are charged with full knowledge of all applicable tariffs, as all citizens "must be presumed to know the law." *Pittsburgh, Cincinnati, Chicago & St. Louis Ry. Co. v. Fink,* 250 U.S. 577, 40 S.Ct. 27, 63 L.Ed. 1151 (1919). *Accord Aero Trucking, Inc. v. Regal Tube Co.,* 594 F.2d 619, 621 (7th Cir.1979).

Logistics Systems argues from this premise that the *Mileage Guide,* because filed with the ICC to be used in conjunction with a particular tariff, has a legal effect similar to that of a statute or judicial opinion, both of which have been held uncopyrightable. *State of Georgia v. Harrison Co.,* 548 F.Supp. 110, 113 (1982), *vacated* 559 F.Supp. 37 (N.D.Ga.1983); *e.g., Wheaton v. Peters,* 33 U.S. (8 Pet.) 591, 8 L.Ed. 1055 (1834) (opinions of United States Supreme Court); *Banks v. Manchester,* 128 U.S. 244, 9 S.Ct. 36, 32 L.Ed. 425 (1888) (opinions of state courts); *Howell v. Miller,* 91 F. 129 (6th Cir.1898) (statutes of Michigan).

Logistics Systems relies heavily on a recent case, *Building Officials & Code Adm. v. Code Technology, Inc.,* 628 F.2d 730 (1st Cir.1980) (hereafter "BOCA" and "CT"). This case concerned plaintiff BOCA's right to copyright a model regulatory building code. There, the State of Massachusetts had adopted and distributed a building code based substantially on BOCA's model code. A private publisher, defendant CT, began publishing and distributing the Massachusetts building code. The district court granted BOCA's preliminary injunction against CT, basing its ruling on BOCA's probability of success in proving that the CT code violated BOCA's copyright. The First Circuit held that a question of fact existed as to whether the building code, as adopted by Massachusetts, was similar enough to a statute or judicial opinion as to be within the public domain. That question lowered the probability that BOCA would succeed in its copyright claim, and the order granting preliminary injunction was reversed.

In this finding, the Court was influenced by the line of cases holding that because laws prescribe penalties, due process requires they be accessible and available for examination and not subject to copyright.

*Id.* at 733–734. Another rationale of cases holding laws uncopyrightable, that they are created by the government and therefore all citizens are authors, did not apply to the model code in *Building Officials* and need not apply to tariffs and distance guides, since both may be shown to have been created by private parties.

The law in this area is old and well settled. It has remained limited to statutes and opinions promulgated by government officials for general application. No great expansions in scope have occurred since the major decisions of the late 1890's. The court sees no reason to extend this body of law to a privately published distance guide that is used as a tariff reference publication.

As stated above, the citizen-as-author rationale is inapplicable because the *Mileage Guide* is privately authored and published. The government cannot be said to have adopted the *Mileage Guide*, since the regulations leave to private choice what type of distance information, if any, should be on file.[9] The only remaining reason to hold tariff publications uncopyrightable is based on the due process argument that if citizens are to be bound by laws, they should have access to them. However, in order to qualify as a tariff publication, a map or distance guide must be made available to the public and may be inspected at ICC offices. 49 C.F.R. § 1001.1–.2.

Carriers must also post and file at each of their stations or offices all tariffs containing rate charges, classifications, and rules or other provisions applying from, or at, such station or office. Carriers must also maintain at their principal offices a complete file of all tariffs issued by them or by their agents. Employees of the carriers are required to give any desired information contained in such tariffs, to lend assistance to information seekers, and to permit inquirers to examine any tariff thereat without requiring any reasons therefor. 49 C.F.R. 1307.44(h), 1310.2. Finally, carriers must promptly furnish a copy of any of their tariff publications to any persons upon reasonable request and at a reasonable charge no greater than that assessed a subscriber. 49 C.F.R. 1307.-48(f), 1310.31(f).

For these reasons, the *Mileage Guide* is not the equivalent of an opinion or statute for purpose of copyrightability.

## DOES RAND McNALLY OWN COPYRIGHTS IN PORTIONS OF THE MILEAGE GUIDE

Given that Rand McNally may show that portions of the eleventh and twelfth editions of the *Mileage Guide* are copyrightable, Rand McNally must also show that it is the owner of valid copyrights in the *Mileage Guide*.[10] *Atari, Inc. v. North American Phillips Consumer Electronics Corp.*, 672 F.2d 607, 614 (7th Cir.), *cert. denied*, 459 U.S. 880, 103 S.Ct. 176, 74 L.Ed.2d 145 (1982); 2 Nimmer, *Nimmer on Copyright* § 13.01 (1982). To establish this, Rand McNally attached to its motion for summary judgment the Certificates of Registration filed with the Register of Copyrights for the *Mileage Guide*'s tenth, eleventh, and twelfth editions.[11] The parties are cor-

---

**9.** It should be noted that were Logistics Systems correct, a private party's choice of a map or mileage guide would automatically move otherwise copyrightable material into the public domain. While a state actor may be able to do so, *see Building Officials*, it is questionable whether a private person may so do.

**10.** That the *Mileage Guide* may be copyrighted does not, of course, mean that all of its contents are copyrighted. Logistics Systems contends, for example, that the mileage data may not be copyrightable. Also, since the *Mileage Guide* is a derivative work, uncopyrighted portions used in it may not be covered by copyright, nor would portions subject to copyrights not owned by Rand McNally.

**11.** Logistics Systems argues that the certificates of registration contain factual misstatements rendering them invalid. The court finds such misstatements do not affect the validity of the copyrights. Minor dating errors have been specifically held not to invalidate a copyright. E.g. *Advisers, Inc. v. Wiesen-Hart, Inc.*, 238 F.2d 706, 708 (6th Cir.1956), *cert. denied*, 353 U.S. 949, 77 S.Ct. 861, 1 L.Ed.2d 858 (1957); *First American Artificial Flowers, Inc. v. Joseph Markovits, Inc.*, 342 F.Supp. 178, 183 (S.D.N.Y.1972). Moreover, the absence of an indication on the certificates

rect in describing these certificates as *prima facie* evidence of Rand McNally's ownership and of the copyrights' validity. 17 U.S.C. 410(c); *Flick-Reedy Corp. v. Hydro-Line Manufacturing Corp.*, 351 F.2d 546, 549 (7th Cir.1965), *cert. denied*, 383 U.S. 958, 86 S.Ct. 1222, 16 L.Ed.2d 301 (1966); *Wihtol v. Wells*, 231 F.2d 550, 553 (7th Cir.1956); *Novelty Textile Mills v. Joan Fabrics Corp.*, 558 F.2d 1090, 1092 (2d Cir.1977).

■ Upon introduction of a properly registered certificate, the burden shifts to the party challenging the copyright somehow to show the invalidity of the copyright. Logistics Systems may present evidence, for example, showing that the *Mileage Guide* was copied from another source and is not therefore an original work of authorship. 2 Nimmer, *Nimmer on Copyright* § 12.11 (1983); *M.M. Business Forms Corp. v. Uarco, Inc.*, 347 F.Supp. 419, 425 (S.D.Ohio), *aff'd*, 472 F.2d 1137 (6th Cir. 1973).

Logistics Systems may also challenge the certificates' validity by disputing the stated authorship of the copyrighted material itself. *Samet & Wells, Inc. v. Shalom Toy Co.*, 429 F.Supp. 895, *aff'd*, 578 F.2d 1369 (E.D.N.Y.1978); *Gardenia Flowers, Inc. v. Joseph Marovits, Inc.*, 280 F.Supp. 776 at 780–781 (proof of facts contrary to those in certificate of registration shifts burden of overcoming evidence to copyright holder; holder here claimed falsely to have been author).

While Logistics Systems sometimes appears to contend that Rand McNally was not the author of the *Mileage Guide*, the court determines that Logistics Systems' attack on the validity of the Certificates of Registration are based on Rand McNally's lack of ownership of the copyrights in question. To this end, Logistics Systems presents evidence directed to showing that the HGCB "commissioned" Rand McNally to create the guides, thereby rendering them works made "for hire" and vesting ownership of the copyrights in the commissioning party, the HGCB.

that the *Mileage Guide* is sold under other titles

■ The test for whether a work has been made for hire differs between the 1909 and 1976 Acts. Logistics Systems contends that the provisions of the 1909 Act govern all of the copyrights in this case. As support, Logistics Systems states that "since all acts with regard to the preparation [of the eleventh edition of the *Mileage Guide*] occurred prior to January 1, 1978 ... [it was] prepared under and governed by the Copyright Act of 1909." Logistics Systems cites no authority for this proposition. The court is aware of one court that has considered this issue. *Excel Promotions Corp. v. Babylon Beacon, Inc.*, 1979 Copyright L.Dec. ¶ 25,107 (E.D. N.Y.1979). There, the court held that the Copyright Act of 1976 governs materials created before January 1, 1978 (the effective date of the Act) "but *not* put into the public domain until after January 1, 1978." *Id.* at 15,629 (emphasis original). The court finds no reason to disagree with this interpretation of the Act's provision, nor does Logistics Systems provide one. As Rand McNally's certificate of registration states that the eleventh edition of the *Mileage Guide* was both published and registered in 1978, the work for hire doctrine outlined in the 1976 Act governs this edition of the *Mileage Guide*.

■ Section 101 defines a "work made for hire" as including works prepared by an employee within the scope of his or her employment. This relationship is neither alleged nor proved by Logistics Systems. A compilation "specifically ordered or commissioned" may also qualify as a work made for hire "if the parties expressly agree in a written instrument signed by them that the work shall be considered a work made for hire." 17 U.S.C. § 101. As Logistics Systems has neither alleged nor shown that such an instrument exists, Logistics Systems has not introduced enough evidence to rebut the presumption of ownership established by Rand McNally's certificate of registration for the *Mileage*

is irrelevant to the granting of the copyright.

*Guide 1978.* This same analysis applies to the *Mileage Guide 1982.*

■ As for the ownership of a copyright in the *Mileage Guide 1963,* the "work made for hire" doctrine of the 1909 Act is applicable. Under this test, Logistics Systems has not presented enough evidence to rebut the presumption of Rand McNally's ownership of the 1963 copyrights. The "work made for hire" doctrine of the 1909 Act does not require an express agreement that the work is indeed one "for hire." That Act granted presumptive ownership to an employer whose employee created copyrightable material, absent an agreement to the contrary. 17 U.S.C. § 26. Logistics Systems rightly notes that the doctrine applied equally to the employer-independent contractor relationship. *Brattleboro Publishing Co. v. Winmill Publishing Corp.,* 369 F.2d 565, 569 (2d Cir.1966). Whether HGCB "commissioned" Rand McNally to create the *Mileage Guide,* as Logistics Systems contends, is a question of the parties' intent. *Id.* Factors important in understanding this intent are (1) whether the work was prepared at the "insistence and expense" of another person, *Murray v. Gelderman,* 566 F.2d 1307, 1310 (5th Cir.1978), and (2) whether the "commissioning" party had the right to control and supervise the work's use and creation, *Scherr v. Universal Match Corp.,* 417 F.2d 497, 500 (2d Cir.1969), *cert. denied,* 397 U.S. 936, 90 S.Ct. 945, 25 L.Ed.2d 116 (1970).

Logistics Systems has presented evidence through Francis L. Wyche, the former Executive Secretary and President of the HGCB. In his affidavit, Wyche claims that the Bureau "instructed" Rand McNally on the composition of the *Mileage Guide,* ordered enough copies of the guides to prevent Rand McNally from suffering financial risk in creating them, and supplied major portions of the *Mileage Guide.* The HGCB is responsible for purchasing three times as many copies of the *Mileage Guide* as other purchasers.

This evidence and the 1909 Act's presumption, however, do not rebut the presumption that Rand McNally owns the copyright. Nowhere does Wyche state that the HGCB initiated the *Mileage Guide,* nor does he acknowledge a "right" to control its creation and use. Rand McNally's concern that the guide be suitable for HGCB uses does not support Logistics Systems' contention that the HGCB directed the creation of the *Mileage Guide.* Whether the HGCB could have exercised power and control over the *Mileage Guide* is the "hallmark" of the work made for hire doctrine, *Epoch Producing Corp. v. Killiam Shows, Inc.,* 522 F.2d 737, 744 (2 Cir.1975), 187 PQ 270, *cert. denied,* 424 U.S. 955, 96 S.Ct. 1429, 47 L.Ed.2d 360, and Logistics Systems does not present evidence supporting such a relationship. Hence, Rand McNally is the presumptive owner of the 1963 edition copyright.

The court therefore finds Rand McNally to be the presumptive owner of copyrights in the tenth, eleventh, and twelfth editions of the *Mileage Guide.* The court does not intend this finding to indicate that Rand McNally has shown the mileage materials copyrightable. Rather, Rand McNally has shown that it has copyright protection over whatever in those editions may be copyrightable.

## ARE RAND McNALLY'S STATE CLAIMS PREEMPTED

Logistics Systems next claims that Count III, alleging a state claim for misappropriation, should be dismissed as preempted by § 301 of the Copyright Act of 1976. That section provides:

(a) On and after January 1, 1978, all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103, whether created before or after that date and whether published or unpublished, are governed exclusively by this title. Thereafter, no person is entitled to any such right or

equivalent right in any such work under the common law or statutes of any State. 17 U.S.C. § 301(a).

In Count III, Rand McNally claims damages for misappropriation of portions of the 1978 and 1982 editions of the *Mileage Guide*. With respect to the data itself, Logistics Systems must show both that the rights created by the Illinois misappropriation doctrine are equivalent to those created by the Act and that the data compilation comes within the subject matter of copyright. With respect to this latter prong, the court has held that a factual compilation falls within the subject matter of copyright. It is irrelevant that the collected facts in question here may turn out not in fact copyrightable, as long as their compilation falls within the Act's subject matter. 1 M. Nimmer, *Nimmer on Copyright* § 1.01[B] at 1–22 through 22.1 & n. 9. While Nimmer asserts that state protection of facts apart from their selection, arrangement, or expression may fall outside of the scope of the Act's subject matter, the court notes that at least in this circuit, factual compilations do fall within the scope of protected subject matter.

 The first prong, that is, the equivalency test, may be satisfied regardless of whether the state-created protection is narrower or broader than federal protection. *Id.* at § 1.01[B]. If the state law prohibits the very act of reproducing, performing, distributing, or displaying the protected matter, then it is preempted. Rand McNally asserts that Illinois misappropriation law requires the additional element of commercial immorality before a claim may be made out. While it is true that an additional element, such as breach of fiduciary duty, may take the state law out of § 301(a), the court finds that immorality and wrongdoing are not additional elements in this sense. 1 M. Nimmer, *Nimmer on Copyright* § 1.01[B], at 1–11, 12, 14.3 through 21 (discussing circularity of "wrongfulness" as additional element). Rand McNally's misappropriation claim is therefore preempted by the Copyright Act

of 1976, at least insofar as it concerns reproduction of the factual compilation.

 Rand McNally next argues that it seeks to protect under the misappropriation claim the use, as opposed to the reproduction, of the factual data. Use may be clearly outside of the subject matter of copyright. For example, a print-out of one particular distance (as opposed to a print-out of the entire compilation) would not be within the subject matter of the Act, as it is a fact not a part of a compilation. See discussion of use of computer data bases at 2 M. Nimmer, *Nimmer on Copyright* § 8.08 at 8–108 through 109. A question remains whether a state created protection of such a fact would violate the first amendment. The court does not now address this issue, as the parties have not framed their discussion in these terms (the first amendment ramifications of copyrighting facts was discussed only in terms of compilations). The court finds now only that as use of the reproduced data bank may be outside of the subject matter test of § 301(a), it is outside of the scope of the preemption doctrine.

 Finally, Rand McNally argues that Logistics Systems copied the procedures, processes, and systems for calculating mileage data. As these procedures are expressly excluded from copyright protection, § 102(b), they fail the subject matter test of § 301(a) and are not preempted.

As it does not appear "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," *Conley v. Gibson*, 355 U.S. 41, 45–6, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957), as to its claims of unfair use of the data and unfair misappropriation of its mileage calculation procedures, the misappropriation claims concerning these two subjects are not preempted. However, any misappropriation claim concerning the reproduction of mileage data is preempted.

## IS RAND McNALLY'S CLAIM BARRED BY LACHES OR ESTOPPEL

 Logistics Systems contends that Rand McNally is estopped from assert-

ing this infringement action, thereby justifying a dismissal of this claim. A serious factual dispute exists on this issue, rendering it inappropriate for resolution on this motion for summary judgment. To establish estoppel in a copyright action, the party to be estopped must be shown to have knowledge of the defendant's infringing conduct and to have intended or actually induced such reliance. In addition, the defendant must be ignorant of the facts, relying on plaintiff's conduct to his detriment. *Lottie Joplin Thomas Trust v. Crown Publishers, Inc.,* 456 F.Supp. 531, 535 (S.D.N.Y.1977), *aff'd* 592 F.2d 651 (1978). In this case, the communications between Rand McNally and Logistics Systems with respect to the sale of the computer tape, for example, present an issue of fact as to whether Rand McNally impliedly acquiesced to Logistics Systems' use of the mileage data. Logistics Systems argues that this licensing arrangement extended to both the eleventh and twelfth editions of the *Mileage Guide.*

■ For the same reasons stated above, Logistics Systems' laches defense cannot now be decided. Rand McNally commenced this suit well within the three year limitations period mandated by the 1976 Act. 17 U.S.C. § 507(b). The applicable statute of limitations has been considered as a guide to whether a suit should be dismissed because of laches. *Greenbie v. Noble,* 151 F.Supp. 45, 60 (S.D.N.Y.1957). However, laches, like estoppel, requires a plaintiff's unreasonable delay in asserting rights when that delay induced reliance by and resulted in prejudice to the defendant. *See Herald Co. v. Seawell,* 472 F.2d 1081, 1099 (10th Cir.1972). Logistics Systems' evidence shows that Rand McNally knew of its intent to use the mileage figures in its data base as early as 1978. Rand McNally's delay in asserting its rights, while within the limitations period, may be shown to have been unreasonable given these disputed facts.

### Conclusion

Logistics Systems' motion for summary judgment based on the uncopyrightability of ICC tariffs is denied. Rand McNally's motion for summary judgment based on the copyrightability of the data contained in the *Mileage Guide 1978* and *Mileage Guide 1982* is denied. The court finds that Rand McNally is the presumptive owner of copyrights in *Mileage Guide 1963, Mileage Guide 1978,* and *Mileage Guide 1982.* A dispute of fact exists over whether Rand McNally is subject to the defenses of estoppel and laches.

It is so ordered.