329 F.2d 782
 141 U.S.P.Q. 84
 Bernard E. BERLENBACH, also called Barney Berlenbach, and
doing business under the fictitious name of
Ski-Free Company, Appellant,
v.
ANDERSON AND THOMPSON SKI CO., Inc., a corporation, Appellee.
 No. 18740.
 United States Court of Appeals Ninth Circuit.
 March 25, 1964, Rehearing Denied May 1, 1964.
 
 Edward B. Gregg and Melvin R. Stidham, San Francisco, Cal., for appellant.
 Richard W. Seed, Seattle, Wash., for appellee.
 Before ORR, JERTBERG and BROWNING, Circuit Judges.
 JERTBERG, Circuit Judge.
 
 
 1
 This action was commenced in November of 1957 by the filing of a complaint, by appellant against appellee, charging infringement of appellant's patent No. 2,698,757 for safety binding for ski runners, and unfair competition.
 
 
 2
 Appellant's application for patent was filed July 5, 1949, and the patent was issued on January 4, 1955.
 
 
 3
 On June 12, 1959 the District Court entered a consent decree dismissing the unfair competition action and holding that appellant's patent was valid and infringed by appellee, and permanently enjoining appellee from further infringement. Consent to said decree was given by the parties pursuant to an agreement dated April 28, 1959, between them whereby appellant gave appellee a 'non-exclusive license to manufacture, use and sell safety bindings for ski runners under said patent for the full term of said patent,' and agreed to accept from appellee a sum certain and royalties.
 
 
 4
 Subsequently, in 1961, appellant gave notice to appellee of an asserted breach of the license agreement (failure to pay royalties; failure to account; and unconsented to manufacture and sale of infringing devices) and of revocation of the license. Thereafter, appellant filed a motion to hold appellee in contempt of the consent decree. In response to this motion, appellee filed a motion for summary judgment, a motion to vacate the consent decree, and a motion to file an answer and counterclaims to the original complaint. After a hearing the district court granted all of appellee's motions.
 
 
 5
 The district court found that on April 7, 1952, while appellant's patent application was pending, appellant entered into a sales agreement with Northland Ski Manufacturing Company;[1] that as of the time of the hearing on the motions, the Northland agreement had not been modified and was still in effect; that no part of the Northland agreement was viewed by appellee prior to August 4, 1961; and that appellee entered into the settlement and license agreement with appellant in good faith believing that appellant had the right to grant appellee a non-exclusive license under the patent. The court concluded that the Northland agreement constituted a license under appellant's patent; that since the Northland agreement was still in effect on April 28, 1959, appellant did not and does not have the right to license appellee under the patent to manufacture, use and sell ski bindings; that paragraph 4 of the Northland agreement constitutes misuse of appellant's patent and because of said misuse the original complaint on file in the action should be dismissed.
 
 
 6
 Appellant here contends that the Northland agreement on its face does not constitute an exclusive license; that it is at least ambiguous so that resort must be had to facts and circumstances outside the four corners of the instrument and that therefore summary judgment was improperly granted; that appellee is estopped to deny the validity of its license agreement with appellant; that the district court erred in granting summary judgment on the ground of patent misuse in the absence of proof of certain indicia of restraint, such as the position of the parties in the industry, the connection between the offending contract provision and the patent in suit, and whether the patentee ever enforced the offending clause; and that in any event patent misuse does not bar an infringement suit unless the patentee's conduct is such as would constitute a violation of section 3 of the Clayton Act, and therefore the court erred in granting summary judgment without proof that the effect of the Northland agreement may be to 'substantially lessen competition or tend to create a monopoly in any line of commerce.' We will discuss these contentions in reverse order for convenience.
 
 
 7
 In a series of cases involving the licensing of patents, the Supreme Court held that clauses which tie-in the exclusive sales of non-patented items with patented items are contrary to public policy for the reason that such tie-in agreements extend the patent monopoly beyond the scope permitted by the Constitution and the Congress. In United States v. Univis Lens Co., Inc., 316 U.S. 241, 62 S.Ct. 1088, 86 L.Ed. 1408 (1942) the court said, the 'method by which the monopoly is sought to be extended is immaterial.'
 
 
 8
 On the strength of these cases, and the language last quoted, the court in National Lockwasher Co. v. George K. Garrett Co., 137 F.2d 255 (3rd Cir. 1943), held that a clause prohibiting a licensee from selling articles in competition with the patented articles likewise constitutes patent misuse which bars the patentee from maintaining a patent suit. This circuit approved and followed the Lockwasher case in McCullough v. Kammerer Corp., 166 F.2d 759 (9th Cir. 1948). The case of Morton Salt Co. v. Suppiger Co., 314 U.S. 488, 62 S.Ct. 402, 86 L.Ed. 363 (1942) specifically rejected the argument that patent misuse must be of such gravity as to violate the Clayton Act in order to bar relief. The court said 314 U.S. at 490, 62 S.Ct. at 404, 86 L.Ed. 363.
 
 
 9
 'The Clayton Act authorizes those injured by violations tending to monopoly to maintain suit for treble damages and for an injunction in appropriate cases. 15 U.S.C. 1, 2, 14, 15, 26. But the present suit is for infringement of a patent. The question we must decide is not necessarily whether respondent has violated the Clayton Act, but whether a court of equity will lend its aid to protect the patent monopoly when respondent is using it as the effective means of restraining competition with its sale of an unpatented article.'
 
 
 10
 In view of the history and policy of the defense of patent misuse we find no merit in appellant's contentions that the proof of substantial lessening of competition is a prerequisite to finding patent misuse. See Park-In Theatres v. Paramount-Richards Theatres, 90 F.Supp. 730 (D.Del.1950), aff'd 185 F.2d 407 (3rd Cir. 1950); and Waco-Porter Corp. v. Tubular Structures Corp. of America, 222 F.Supp. 332 (S.D.Cal.1963). Neither do we feel that the cases cited in the margin[2] overrule the Morton Salt case, as appellant suggests.
 
 
 11
 The Morton Salt case contains the following language 314 U.S. at page 493, 62 S.Ct. at page 415, 86 L.Ed. 363:
 
 
 12
 'Maintenance and enlargement of the attempted monopoly of the unpatented article are dependent to some extent upon persuading the public of the validity of the patent, which the infringement suit is intended to establish. Equity may rightly withhold its assistance from such a use of the patent by declining to entertain a suit for infringement, and should do so at least until it is made to appear that the improper practice has been abandoned and that the consequences of the misuse of the patent have been dissipated.'
 
 
 13
 Appellant argues that he will prove, if permitted to, that he never enforced paragraph 4 of the Northland agreement. He contends that non-enforcement of the provision is tantamount to abandonment of the improper practice and dissipation of its consequences within the meaning of the language just quoted. If this is not an issue of 'material' fact, it is of no avail to appellant's efforts to reverse the summary judgment. As we view the present state of the law, the question of enforcement is immaterial. In F. C. Russell Co. v. Consumers Insulation Co., 226 F.2d 373 at page 376, (3rd Cir. 1955) a case involving a manufacturer's exclusive dealership contract containing a clause such as paragraph 4 of the Northland agreement, the court said:
 
 
 14
 'Russell attempts to assert a number of defenses to the foregoing. It contends that the real test is whether or not it has enforced or attempted to enforce the invalid provisions of its sales agreements to which we have referred. Ergo, says Russell, there is no showing that it has gone beyond the purpose and limits of the protection of the patent. It relies in large part on the March 31, 1955 report of 'The Attorney General's National Committee to Study the Anti-Trust Laws', which commented specifically on Russell's case in the Seventh Circuit Court of Appeals, cited above. The comments in pertinent part are set out in the footnote. 'Russell insists that it has not attempted illegally to extend the scope of its patent monopoly. But here is a field of competitive selling in which the holder of a patent by way of agreements, at least related to a patent monopoly, has given itself the power to control both distributors and dealers if it wishes to do so. The inchoate threat which these circumstances engender hangs in the air and we may doubt that that threat is without its effect in a highly competitive market. We cannot agree with the Attorney General's Committee, distinguished as its membership is, when the Committee says in commenting on Russell v. Comfort, that 'there was nothing to indicate that * * * (the patent) had any practical relationship with the exclusive agreement.' There is in fact a relationship and it seems to us to be a very practical one, for it may not be assumed that the contracts and the patent came into juxtaposition inadvertently or accidentally. The parties, their dealers, distributors and, indeed, their customers, are not living in a strange, non-commercial world where exclusive agreements are found under Christmas trees.
 
 
 15
 'But, aside from the foregoing, the Supreme Court has held that whether an illegal provision of a contract is or is not enforced makes no difference if the contract gives the patentee, as here, the power to effect enforcement. See, for example, United Shoe Machinery Corp. v. United States, 1922, 258 U.S. 451, 458, 42 S.Ct. 363, 66 L.Ed. 708, and similar decisions. Certainly, if the law is to be changed in this respect, it should be altered by the Supreme Court and not by this tribunal.'
 
 
 16
 Although we have said that non-enforcement and voluntary relinquishment of an illegal clause will overcome the defense of patent misuse,[3] we know of no case permitting an infringement suit where the clause remains in effect but unenforced.
 
 
 17
 Appellant's reliance upon Republic Molding Corp. v. B. W. Photo Utilities, 319 F.2d 347 (9th Cir. 1963) is misplaced. There we were concerned with the plaintiff's disregard of the statute prohibiting falsely advertising 'patent applied for' or 'patent pending.' We were unable to find any connection between the right asserted and the acts of misconduct, and held that the doctrine of 'unclean hands' did not bar plaintiff's infringement suit. We recognized that patent misuse such as here involved must be 'purged' under the Morton Salt case. The Supreme Court said 314 U.S. at page 494, 62 S.Ct. at page 406, 86 L.Ed. 363 of the Morton Salt case:
 
 
 18
 'It is the adverse effect upon the public interest of a successful infringement suit in conjunction with the patentee's course of conduct which disqualifies him to maintain the suit, regardless of whether the particular defendant has suffered from the misuse of the patent.'
 
 
 19
 In view of our conclusion that the district court was correct in granting summary judgment on the ground of patent misuse, we do not reach appellant's remaining specifications of error. The judgment of the district court is affirmed.
 
 
 
 [1]
 'WHEREAS, First Party is presently manufacturing a safety type of automatic releasing ski binding known as SKI FREE SAFETY SKI BINDING, and
 'WHEREAS, Second Party is desirous of buying and distributing said ski binding throughout the United States and Canada, the parties hereto agree as follows:
 '1. For the duration of this agreement Second Party agrees to buy and First Party agrees that Second Party shall have the exclusive right to sell and distribute said safety ski binding, together with any improvement that may be added thereto by First Party with the approval of Second Party, throughout the United States and Canada. First Party agrees to take all steps necessary to patent and otherwise safeguard against any encroachment upon the trade name or design of said binding.
 '* * *wit
 '4. It is understood and agreed that during the term of this agreement, or any extension thereof, Second Party shall not manufacture or distribute in the United States and Canada any other safety type or automatic releasing ski binding other than that manufactured by First Party, together with any improvements developed by First Party and approved by Second Party.'
 
 
 [2]
 Standard Oil Co. of California v. United States, 337 U.S. 293, 69 S.Ct. 1051, 93 L.Ed. 1371 (1949); White Motor Company v. United States, 372 U.S. 253, 83 S.Ct. 696, 9 L.Ed.2d 738 (1963); Tampa Electric Company v. Nashville Coal Co., 365 U.S. 320, 81 S.Ct. 623, 5 L.Ed.2d 580 (1961)
 
 
 [3]
 Zajicek v. Kool Vent Metal Awning Corp. of America, 283 F.2d 127 (9th Cir. 1960)