**Louis Gilbert DUBUIT et al., Plaintiffs,**

v.

**HARWELL ENTERPRISES, INC. and Roy M. Harwell, Jr., Defendants.**

**Civ. A. No. 2525.**

United States District Court,
W. D. North Carolina,
Charlotte Division.
Aug. 30, 1971.

Floyd A. Gibson, Parrott, Bell, Seltzer, Park & Gibson, Charlotte, N. C., Robert E. Wagner, Walsh, Case & Coale, Chicago, Ill., for plaintiffs.

Basil L. Whitener, Whitener & Mitchem, Gastonia, N. C., Jack E. Dominik, Dominik, Knechtel & Godula, Chicago, Ill., for defendants.

## ORDER ALLOWING MOTION OF DEFENDANTS FOR SUMMARY JUDGMENT

McMILLAN, District Judge.

On August 18, 1969, plaintiffs Dubuit, Machines Dubuit and American Screen Process Equipment Company (hereinafter called American) filed this action against defendants Roy M. Harwell, Jr. and Harwell Enterprises. The action is in four counts. The principal count alleges infringement of United States Patent No. 3,090,300, which was issued in 1963 to Louis G. Dubuit of Paris, France, for a "Silk Screen Printing Machine."

Defendant Harwell Enterprises of Gastonia, North Carolina, manufactures printing equipment which is the subject of this suit. The plaintiffs contend that the Harwell equipment infringes the Dubuit patent. However, the defendants point to a contract of November 20, 1962, in which Machines Dubuit makes American its exclusive distributor in the United States, and raise the defense of patent misuse. Because of several provisions in that contract, the defendants contend that plaintiffs have abused their patent monopolies and, therefore, that this court should refuse to grant the requested relief until the effects of the alleged abuse have been purged. Defendants specifically point to the following contract clauses:

1.—American Screen Process Equipment Co. (called American) is hereby appointed the exclusive distributor of Machines Dubuit (called Dubuit) in the United States of America for the sale of all equipment manufactured by Dubuit. American accepts such appointment and agrees to act as distributor for Dubuit in accordance with this letter agreement.

2.—Dubuit agrees to forward to American all inquiries or orders it re-

ceives for Dubuit equipment from customers in the United States. American agrees to forward to Dubuit all such orders or inquiries from customers outside the United States.

\*   \*   \*   \*   \*   \*

8.—American agrees that it will not, directly or indirectly manufacture, import or sell any equipment for direct printing on 3-dimensional objects or accessories therefor, *whether patented or unpatented*, other than the equipment and accessories sold to it by Dubuit under this agreement. [Emphasis added.]

American may, however, supply its customers with such spare-parts which must be tooled at American pitch. American may also manufacture and sell equipment other than for printing on objects, such as lehrs and accidentally its flame treater equipment (for polyethylene objects). It is understood that if such lehr is manufactured in accordance with designs supplied by Dubuit, American will pay to Dubuit a royalty of—the sales price of such equipment.

Defendants contend that the contract amounts to misuse of the patent by means of a "tying arrangement," i. e. an attempt by the patentee to expand his patent monopoly by "tying" unpatented products to his patented products. As here alleged, Machines Dubuit has attempted to limit American's business dealings to the products *"whether patented or unpatented,"* of Dubuit only.

■■   It is settled law that a patentee who utilizes a "tying arrangement" will be denied all relief against infringement of his patent. McCullough Tool Co. v. Well Surveys, Inc., 343 F.2d 381 (10th Cir. 1965), cert. denied, 383 U.S. 933, 86 S.Ct. 1061, 15 L.Ed.2d 851. See also, e. g. Morton Salt Co. v. G. S. Suppiger Co., 314 U.S. 488, 62 S.Ct. 402, 86 L.Ed. 363 (1942). The law is uniform in protecting the inventor covered by the patent procedure; however, the courts are adamantly opposed to allowing the patentee to use his advantage to secure an exclusive right not granted by the patent.

■   This defense is fully available, not only to one under license with the patentee but to all parties who are sued for infringement. In Morton Salt Co. v. G. S. Suppiger, *supra*, Mr. Justice Stone discussed the policy involved:

It is the adverse effect upon the public interest of a successful infringement suit in conjunction with the patentee's course of conduct which disqualifies him to maintain the suit, regardless of whether the particular defendant has suffered from the misuse of the patent. \* \* \* The patentee, like these other holders of an exclusive privilege granted in the furtherance of a public policy, may not claim protection of his grant by the courts where it is being used to subvert that policy. 314 U.S. 488, 494, 62 S.Ct. 402, 406, 86 L.Ed. 363.

Thus the defendants have a full defense under the Dubuit-American contract, although they are strangers to that contract. The *Morton Salt* case makes this point clear. For another example of a third party successfully asserting the contract of two other parties in establishing a patent misuse defense, see the *McCullough Tool* case, *supra*, especially, 343 F.2d at 404–407.

The Dubuit-American contract in question here falls within the category of patent abuse. The contract very closely resembles a contract held abusive in Berlenbach v. Anderson and Thompson Ski Co., Inc., 329 F.2d 782 (9th Cir., 1964), cert. denied, 379 U.S. 830, 85 S. Ct. 60, 13 L.Ed.2d 39 (1964), where the contract, in pertinent part, stated:

WHEREAS, First Party is presently manufacturing a safety type of automatic releasing ski binding known as SKI FREE SAFETY SKI BINDING, and

WHEREAS, Second Party is desirous of buying and distributing said ski binding throughout the United

States and Canada, the parties hereto agree as follows:

1. For the duration of this agreement Second Party agrees to buy and First Party agrees that Second Party shall have the *exclusive right* to sell and distribute said safety ski binding, together with any improvement that may be added thereto by First Party with the approval of Second Party, throughout the United States and Canada. First Party agrees to take all steps necessary to patent and otherwise safeguard against any encroachment upon the trade name or design of said binding. [Emphasis added.]

\* \* \* \* \* \*

4. It is understood and agreed that during the term of this agreement, or any extension thereof, Second Party shall not manufacture or distribute in the United States and Canada any other safety type or automatic releasing ski binding other than that manufactured by First Party, together with any improvements developed by First Party and approved by Second Party.

██ In both the present case and the *Berlenbach* case, the contracts cover exclusive distributorships and prohibit the manufacture and distribution of any equipment which would compete with the patentee's goods, whether or not such equipment were covered by a valid patent. The Court in *Berlenbach* decided that the existence of such contract provisions, even if not enforced by the patent holder, constituted patent misuse. Therefore a motion for summary judgment was granted to the defendant.

As in Berlenbach, the patentee has here rendered his patent unenforceable by attempting to extend his patent coverage beyond its permissible scope. Like Aesop's dog, he seeks to take in too much, and must lose what he already had. The contract contains a "tying arrangement" which constitutes patent misuse. Defendants' motion for summary judgment is accordingly granted.