**PRACTICE MANAGEMENT INFORMATION CORPORATION, a California corporation, Plaintiff–Counterdefendant,**

v.

**AMERICAN MEDICAL ASSOCIATION, an Illinois nonprofit corporation, Defendants–Counterplaintiff.**

No. CV 94–3107 DT (GHKx).

United States District Court, C.D. California.

Dec. 8, 1994.

Darrell L. Olson, Joseph R. Re, Paul A. Stewart, Knobbe, Martens, Olson and Bear, Newport Beach, CA, for plaintiff.

Peter I. Ostroff, Sharon Helene Pohoryles, Sidley & Austin, Los Angeles, CA, Henry L. Mason, III, Quincy White, Sidley & Austin, Chicago, IL, for American Medical Ass'n.

ORDER GRANTING DEFENDANT AMERICAN MEDICAL ASSOCIATION'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND DENYING PLAINTIFF PRACTICE MANAGEMENT INFORMATION CORPORATION'S CROSS–MOTION FOR SUMMARY JUDGMENT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 56(c).

TEVRIZIAN, District Judge.

### Background

1. *Summary of Facts.*

This action arises under the Declaratory Judgment Act, 28 U.S.C. § 2201. Plaintiff Practice Management Information Corporation ("PMIC") seeks a declaration that certain copyrights for the book entitled *Physicians' Current Procedural Terminology* ("CPT") of defendant American Medical Association ("AMA") are invalid and unenforceable because the federal government has required physicians to use the numerical codes contained in the CPT when describing medical procedures in requests for government reimbursement.

The following facts are undisputed. PMIC is a publisher of medical books. Defendant

American Medical Association ("AMA") is a non-profit corporation and its business includes publishing, licensing for publication, and selling books used by medical professionals.

Since 1966, the AMA has published the CPT, a reference book which describes medical services performed by physicians and assigns a specific numerical code to each service. Declaration of Barry S. Eisenberg, ¶ 4 (Filed in support of Defendant's Opposition to Plaintiff's Motion for Preliminary Injunction) ("Eisenberg Decl."); *see also* CPT, attached as Exhibit 1 to the Declaration of James Davis filed in support of PMIC's Motion for Preliminary Injunction ("CPT" or "Exh. 1"). The CPT contains a list of thousands of five-digit code numbers and two-digit modifiers, each followed by a description of particular medical procedures. *See* CPT; U.S. Dept. of Health and Human Services, Office of Inspector General, Coding of Physician Services A–1 to A–2 (May 1994) ("HHS Report") at p. 1 and attached to the Eisenberg Decl. as Exhibit "C" (which was attached to the AMA's Opposition to PMIC's Motion for Preliminary Injunction). The code numbers and their accompanying descriptions are listed in numerical order, except that the frequently used code numbers beginning with the digits "99" are listed first. *See* CPT.

The CPT is used by physicians to obtain reimbursement for their medical services from the federal government, state governments and from private insurers. Eisenberg Decl., ¶¶ 6, 14. The physician finds the most accurate description for the services he or she has performed, locates the corresponding CPT code number and writes the number on the appropriate reimbursement forms. In addition, the CPT also contains guidelines and definitions which instruct medical professionals how to use the CPT. The guidelines appear at the beginning of each section and are essential for selecting the correct CPT code number. *See* CPT, at p. xii.

The AMA updates the CPT every year, revising the code numbers, descriptions, definitions, and guidelines. The AMA publishes and distributes the revised edition of the CPT in the fall of each year. The 1995 CPT was scheduled for release in October 1994.

The Health Care Financing Administration ("HCFA") is an agency of the United States Department of Health and Human Services ("HHS"). The HCFA is responsible for administrating the financial reimbursement of hospitals, physicians, and other health-care professionals for medical services performed under the federally funded Medicare and Medicaid programs. 42 Fed.Reg. 13262 (March 9, 1977). HCFA is specifically charged with developing a uniform coding system for medical procedures to be used for reimbursement in all HCFA-administered programs. 42 U.S.C. § 1395w–4(c)(5). This system is commonly known as the HCFA Common Procedure Coding System or "HCPCS".

On February 1, 1983, HCFA entered into a licensing agreement with the AMA in which the AMA granted HCFA a royalty-free, non-exclusive license to use the CPT coding system. HHS Report at A–1 to A–2; Agreement, the Department of Health and Human Services, Health Care Financing Administration and American Medical Association, ¶ 3(a) dated February 1, 1983 ("Agreement") and attached as Exhibit "C" to AMA's Answer. HCFA may terminate the Agreement upon ninety days notice. Agreement, ¶ 10.

In exchange for this royalty-free license, HCFA promised to use its regulatory powers as a federal agency to "require the use of CPT–4 . . . in programs administered by HCFA by its agents and other entities participating in those programs." Agreement, ¶ 2(b). HCFA also promised not to use any other system of procedure nomenclature for reporting physicians' services. Agreement, ¶ 1. The Agreement also requires HCFA to include a copyright notice whenever it reprints the CPT. Agreement, ¶ 3(c). The notice is specifically designed to inform the public that only the AMA may reproduce the federally mandated AMA CPT system. Agreement, ¶ 3(c).

HCFA, other federal agencies and the United States Congress have incorporated

the CPT into federal law.[1] These statutes and regulations mandate the use of the CPT coding system for obtaining reimbursement from the federal and state governments for medical services. For example, HCFA requires all states which receive federal funding or their Medicaid programs to adopt the CPT as the exclusive coding system to be used by all Medicaid health-care providers. 42 C.F.R. § 433.112(b)(2); *State Medicaid Manual,* Part 11, Section 11300 (App.K); *Medicaid Management Information Systems Requirements for Physician and Supplier Services,* 50 Fed.Reg. 40895, 40898 (October 7, 1985) (adopting this requirement) (App. C).

The Department of Labor requires all health-care providers treating patients under the Federal Employees' Compensation Act to identify their services using only the CPT coding system. 20 C.F.R. § 10.411; *see also* 51 Fed.Reg. 8280 (March 10, 1986) (adopting this requirement) (App. D). Similarly, Section 9343(g) of the Omnibus Budget Reconciliation Act of 1986 requires that all hospitals, "as a condition of payment for outpatient hospital services" under Medicare Part B, to use the CPT to report their services. Pub.L. No. 99–509, § 9343(g), 100 Stat. 2040 (reprinted as a note following 42 U.S.C.S. § 1395(u) (App. E).

HCFA annually publishes a complete list of the CPT code numbers in the *Federal Register.* Each code number is listed in numerical order and is accompanied by an abbreviated description of the medical services which the code number designates, and a table of numbers which are used to calculate the reimbursement that health-care professionals will receive for performing the listed medical services. HCFA also publishes a series of manuals, including the Medicare Intermediary Manual and the State Medicaid Manual, which provide instructions to the institutions that process claims under Medicare and Medicaid. 53 Fed.Reg. 21730 (June 9, 1988). These manuals require the processing institutions to accept reimbursement applications which identify medical services using CPT code numbers.

For the past several years, PMIC has been reselling the CPT as printed by the AMA and currently resells more CPT books than anyone else. However, according to PMIC, the quality of the CPT has been declining annually, and the 1995 CPT published by the AMA will contain many errors and omissions. The AMA announced that it will, for the first time, increase the size of its book from 6″ × 9″ to 8.5″ × 11″. PMIC claims that its customers overwhelmingly prefer the traditional 6″ × 9″ format. This preference has allegedly led PMIC to standardize its entire line of medical coding books in the 6″ × 9″ format. PMIC has indicated it intends to publish its own reference material using the CPT coding system or modified versions of the CPT coding system in the 6″ × 9″ format with its own corrections.

### 2. *Procedural History.*

PMIC filed its original Complaint on May 12, 1994. PMIC filed a motion for preliminary injunction against the AMA to enjoin the AMA from enforcing any copyrights for the CPT. On July 25, 1994, this Court denied that motion for preliminary injunction on the grounds that the CPT was sufficiently original to entitle it to copyright protection ("July 25 Order"). This Court rejected three of the four arguments presented by PMIC. The only issue left for determination was whether the federal government could destroy a valid copyright for a privately created reference book where the federal government then requires all physicians to use that reference book when participating in a federal program and seeking reimbursements. July 25, 1994 Order, at pp. 12–16.

On August 23, 1994, the parties signed a Stipulated Protective Order in which they agreed that certain evidence pertinent to this case may contain confidential or trade secret information and that such evidence or information would be designated as confidential.

On September 22, 1994 by Stipulation with PMIC, the AMA filed its Answer and Second Amended Counterclaim.

---

1. Section 9343(g) of the Omnibus Budget Reconciliation Act of 1986 requires that all hospitals, "as a condition of payment for outpatient hospital services" under Medicare Part B to use the CPT to report their services. Pub.L. No. 99–509, § 9343(g), 100 Stat. 2040 (reprinted as a note following 42 U.S.C.S. § 1395(u) (App. E).

On October 21, 1994, the AMA filed the present Motion for Partial Summary Judgment seeking a judgment that the federal government's requirement that physicians use the CPT coding system when seeking reimbursement for participating in a federal program does not destroy a valid copyright in a privately created reference work. This motion is now before this Court.

On November 7, 1994, PMIC filed its Cross–Motion for Summary Judgment of Copyright Invalidity. This motion is also presently before this Court and is addressed concurrently herein.

On November 14, 1994, AMA filed a Motion for Preliminary Injunction to enjoin PMIC from using any portion of the CPT without the AMA's express written authorization. This motion is presently before this Court and is addressed in a separate order.

On November 15, 1994, PMIC filed its First Supplemental Complaint by Stipulation with the AMA. The First Supplemental Complaint, in addition to the original request for declaratory judgment, also seeks monetary damages for statutory and common law unfair competition, intentional interference with contractual relationships, intentional interference with prospective economic advantage, false representation, specific performance, breach of contract and breach of the covenant of good faith and fair dealing. The First Supplemental Complaint does not affect any of the motions presently before this Court.

### Discussion

### 1. Standard.

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper only where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The moving party has the burden of demonstrating the absence of a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). If the moving party satisfies the burden, the party opposing the motion must set forth specific facts showing that there remains a genuine issue for trial. Fed.R.Civ.P. 56(e).

A non-moving party who bears the burden of proof at trial to an element essential to its case must make a showing sufficient to establish a genuine dispute of fact with respect to the existence of that element of the case or be subject to summary judgment. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Such an issue of fact is a genuine issue if it reasonably can be resolved in favor of either party. *Anderson,* 477 U.S. at 250–51, 106 S.Ct. at 2511. The non-movant's burden to demonstrate a genuine issue of material fact increases when the factual context renders her claim implausible. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Thus, mere disagreement or the bald assertion that a genuine issue of material fact exists, no longer precludes the use of summary judgment. *Harper v. Wallingford,* 877 F.2d 728 (9th Cir.1989); *California Architectural Building Products, Inc. v. Franciscan Ceramics, Inc.,* 818 F.2d 1466, 1468 (9th Cir. 1987), *cert. denied,* 484 U.S. 1006, 108 S.Ct. 698, 98 L.Ed.2d 650 (1988).

### 2. The CPT Is Not A "Law".

■ The Copyright Act extends copyright protection to original works of authorship. 17 U.S.C. §§ 102(a), 103. This Court has already determined that the CPT "is sufficiently original to entitle it to copyright protection." July 25 Order, at p. 13. The Copyright Act denies copyright protection only for statutes and judicial opinions originally created by the federal government or its officials. 17 U.S.C. §§ 101, 105.

In 1909, Section 7 of the Copyright Act provided a savings clause to allow the government to use copyrighted materials in its publications. H.Rep. 2222, 60th Cong., 2d Sess. 10 (1909). Further, Section 8 of the prior act provided:

"The publication or republication by the Government, either separately or in the public document, of any material in which copyright is subsisting shall not be taken

to cause any abridgement or annulment of the copyright or to authorize any use or appropriation of such copyright material without the consent of the copyright proprietor."

17 U.S.C. § 8 (1909). In 1976, Congress further confirmed that "publication or other use by the Government of a private work would not affect its copyright protection in any way." H.R.Rep. No. 1476, 94th Cong., 2d Sess. 60 (1976) re 17 U.S.C. §§ 101, 105, and reprinted in 1976 U.S.C.C.A.N. 5659, 5672; M. Nimmer & D. Nimmer, *Nimmer on Copyright*, § 5.06[B][2] 1993; 1 Paul Goldstein, *Copyright*, § 2.5.2.2 (1989).

PMIC contends that the CPT is a "law" because its contents are incorporated by federal and state governments in various statutes and regulations, and it is therefore exempt from copyright protection. This Court disagrees. A ruling in PMIC's favor would be tantamount to invalidating the longstanding copyrights of such privately developed works as *A Uniform System of Citation* or West Publishing Company's case numbering system. Such a ruling would also be inconsistent with longstanding case law. *Educational Testing Services v. Katzman*, 793 F.2d 533, 540 (3d Cir.1986) (upholding the ETS copyright even though the standardized test is a required entrance exam for many state schools); *West Publishing Co. v. Mead Data Central, Inc.*, 799 F.2d 1219 (8th Cir. 1986), *cert. denied* 479 U.S. 1070, 107 S.Ct. 962, 93 L.Ed.2d 1010 (1987) (required use of West numbering system for its reporters in the practice of law did not invalidate West's copyright). These private works, like the CPT, are required for use by the public, but such works have not themselves been enacted as law.

PMIC's position would undermine the official policies of the federal government to utilize private works. The Office of Management and Budget ("OMB") has directed federal agencies to adopt private works "whenever practicable and appropriate" thereby "eliminat[ing] . . . costs to the Government."

Revision of OMB Circular No. A–119, Notice of Implementation, 58 Fed.Reg. 57643, 57644–57645 (October 26, 1993) (attached to the AMA's Moving Papers as Exhibit "A"). The OMB's stated policy provides:

"Voluntary standards adopted by Federal agencies should be referenced, along with their dates of issuance and sources of availability, in appropriate publications, regulatory orders, and related in-house documents. Such adoption should take into account the requirements of copyright and other similar restrictions."

*Id.* Similarly, the Federal Communications Commission ("FCC") has adopted technical standards promulgated by the American National Standards Institute ("ANSI") which are set forth in a copyrighted publication of the Institute of Electrical and Electronics Engineers.[2] The Environmental Protection Agency also relies on standards promulgated and copyrighted by a private company, the American Society for Testing and Materials ("ASTM"). Declaration of Morris R. Brooke, at pp. 3–7.

The copyrights of privately developed works have been upheld and not ruled "laws" where the public has been required to use such work in governmental programs. *Rand McNally & Co. v. Fleet Management Systems, Inc.*, 591 F.Supp. 726, 736 (N.D.Ill. 1983) (upholding a copyright despite the federal government's use of a privately published distance guide as a tariff reference publication); *Del Madera Properties v. Rhodes and Gardner, Inc.*, 637 F.Supp. 262, 264 (N.D.Cal.1985), *aff'd,* 820 F.2d 973 (9th Cir. 1987). The *Del Madera* Court found:

"defendants argue that edicts of governments such as judicial opinions, administrative rulings, and legislative enactments are not copyrightable for reasons of public policy. 17 U.S.C. § 702 . . . In support of this argument, defendants rely on *Building Official & Code Administrators International, Inc. v. Code Technology, Inc.*, 628 F.2d 730 (1st Cir.1980) . . . Defen-

---

2. The FCC requires communications companies to use Rand McNally's *Commercial Atlas & Marketing Guide* when conducting their operations in a given locality. FCC, Public Notice, Personal Communications Services Information (Sept. 22,

1994) (which acknowledges Rand McNally's copyright and the licensing agreement) (A copy of this document was attached to the AMA's moving papers as Exhibit "E").

dants' 'governmental enactment' argument is unpersuasive. There is no basis for a holding that the Tentative Map is an administrative ruling, legislative enactment, or similar official document. Unlike the building code at issue in *Code Technology*, the Map is not a self-executing ordinance. The analogous enactment consists of Resolution 1165 that approved the Tentative Map. The Map itself was merely approved and was not transformed by this act into law."

637 F.Supp. at 264. Similarly, the *Rand McNally* court held:

"The law in this area is old and well-settled. It has remained limited to statutes and opinions promulgated by government officials for general application. No great expansions in scope have occurred since the major decisions of the late 1890's. The court sees no reason to extend this body of law to a privately published distance guide that is used as a tariff reference publication."

591 F.Supp. at 736. Thus, a federal agency's incorporation of a privately developed reference work as required use when participating in a government program does not destroy the copyright for that work. *Del Madera,* 637 F.Supp. at 264; *Rand McNally,* 591 F.Supp. at 735–736.

The *Code Technology* and *NADA Services Corp. v. CCC Information Services, Inc.* ("*NADA*") cases cited by PMIC are inapposite. *NADA,* 1991 WL 287961 1991 U.S.Dist. LEXIS 18874 (N.D.Ill.1991).[3] The *Code Technology* case involved a privately developed building code that the state of Massachusetts adopted as a set of administrative regulations. 628 F.2d at 731. Because that building code provided for self-executing guidelines and violations of these guidelines could lead to sanctions, the *Code Technology* court held that the subject building code was not entitled to copyright protection. 628 F.2d at 734. Unlike the *Code Technology* building code, the CPT does not have self-executing guidelines and there is no provision for sanctions. Further, the Agreement pro-

vides that the HCFA may terminate its agreement with the AMA and discontinue use of the CPT upon 90 days written notice. Agreement, ¶ 10. Thus, the legislature need not take any formal legal action to repeal the CPT to cease the use of the CPT for reporting purposes, as required with a "law".

*Del Madera* is directly on point with this case. Like *Del Madera,* the CPT is not a self-executing ordinance. The CPT is a reference book with descriptions of medical procedures and corresponding numerical codes. In essence, the CPT is used to facilitate the procedural implementation of a federal law, but the CPT does not affect nor alter any physician's substantive rights. The CPT does not prescribe the conditions under which a particular medical service is subject to reimbursement. The federal government does not have to repeal a statute or ordinance to cease using the CPT for Medicaid or Medicare reporting. The HCFA need only give the AMA 90 days written notice of termination of the Agreement. The CPT does not sound like, look like nor act like a law.

The HCFA recognized that the AMA's copyright must be preserved "to ensure both that CPT would be maintained in a consistent and reliable form for the foreseeable future and that it would be updated in a timely manner." Brown Decl., ¶ 6. The Agreement specifically acknowledges the validity of the AMA's copyright in the CPT and the HCFA's intention not to destroy that copyright by utilizing the medical coding system provided in that private work. Agreement, ¶ 3(c).

This Court notes that public policy concerns also militate against PMIC's position that the CPT is a law and is therefore invalid. PMIC's position would amount to an unlawful taking of private property. Under PMIC's position, the government could adopt any portion of a private copyrighted work for any purpose and at any time, and the copyright would be invalidated. Such a scenario would have a complete chilling effect upon private industry. Private industry would

---

3. As this Court noted in its July 25 Order, the *NADA* case is distinguishable because this matter was not decided on the merits regarding the copyright misuse claim. The *NADA* court merely denied the motion for preliminary injunction. July 25 Order, at p. 11, n. 2.

have no incentive to spend enormous sums on research and development knowing that the government could at any time incorporate such work. Brooke Decl., ¶¶ 7–8, 10. Under this reasoning, the public would also suffer because the government would be required to invest vast tax dollars to research areas which in the past the government has had the ability to utilize the private sector's advancements.

In essence, PMIC merely seeks to plagiarize the private work of the AMA without compensating the AMA for its copyright. PMIC is not entitled to do so. Based upon the foregoing, this Court rejects PMIC's claim that the AMA consented to the government's adoption of the CPT as law and finds that the CPT is not a "law", the CPT is entitled to copyright protection, and grants the AMA's Motion for Summary Judgment on this ground.

### 3. *PMIC's Position Would Amount To An Unlawful Taking.*

■ This Court has already ruled that destruction of the AMA's copyright in the CPT would amount to an unlawful taking of the AMA's property. July 25 Order, at p. 10. This Court specifically found that:

"PMIC has failed to sufficiently rebut the AMA's takings argument. As the AMA points out, '[a]n interest in a copyright is a property right protected by the due process and just compensation clauses of the Constitution.' *See* Opposition at 14–15; *Roth v. Pritikin,* 710 F.2d 934, 939 (2d Cir.), *cert. denied,* 464 U.S. 961, 104 S.Ct. 394, 78 L.Ed.2d 337 (1983). This Court is unwilling to hold, at this time, that the AMA somehow waived its property rights in the CPT by encouraging the government to adopt the CPT as the industry standard for obtaining reimbursement for various medical procedures."

*Id.* As noted in Section 2 *supra,* PMIC's position would amount to a full scale taking of thousands of copyrights by the federal government and would subject the government to millions of dollars in just compensation awards. The *Roth* court noted that:

"the spectre of a constitutional issue concerning the proper application of the 'takings clause' . . . is sufficient cause to construe the statute" to avoid reaching issues under the Takings Clause."

710 F.2d at 939. There is more than ample evidence before this Court which indicates that the Takings Clause of the Constitution would be violated if the Court were to adopt PMIC's position. Therefore, this Court again finds that PMIC has failed to rebut the AMA's takings argument.

### 4. *PMIC'S Copyright Misuse Claim Is Without Merit.*

■ PMIC contends that the AMA has misused its copyright in the CPT by violating the Clayton Act through its exclusive dealing arrangement with the HCFA. PMIC also contends that the AMA's conduct constitutes copyright misuse by analogy to the antitrust laws. This Court disagrees. Although this Court acknowledges that some courts have recognized the copyright misuse claim (*Broadcast Music, Inc. v. Hearst/ABC Viacom Entertainment Servs.,* 746 F.Supp. 320 (S.D.N.Y.1990)), this Court finds that the undisputed facts demonstrate that the Agreement does not amount to copyright misuse. This Court previously ruled that the PMIC failed to show sufficient evidence of copyright misuse. July 25 Order, at pp. 15–16. This Court also previously distinguished the *Lasercomb Am., Inc. v. Reynolds,* 911 F.2d 970 (4th Cir.1990) case so heavily relied upon by PMIC again in its present opposition and cross-motion.[4]

---

4. The other cases cited by PMIC on its copyright misuse argument are also distinguishable from the present case. *Saturday Evening Post Co. v. Rumbleseat Press, Inc.,* 816 F.2d 1191, 1200 (7th Cir.1987) (the court denied a copyright misuse claim for failure to prove a violation of antitrust law and noting that there is less danger of monopoly in the copyright context than in the patent arena); *National Cable Television Association, Inc. v. Broadcast Music, Inc.,* 772 F.Supp. 614, 652 (D.D.C.1991) (where court held that the infringers failed to prove any violation of the antitrust laws or that the patentee somehow illegally extended its monopoly or violated the public policy underlying the copyright law to establish patent misuse. The court noted that "any anticompetitive effects" engendered by the patentee "are outweighed by the beneficial effects" that promote the "important public purposes of the Copyright Act: the compensation of copy-

PMIC has failed to provide this Court with any new or persuasive evidence to support its copyright misuse claim. The law and undisputed facts before this Court demonstrate that the Agreement does not violate public policy and does not constitute copyright misuse. The Agreement is freely terminable upon 90 days written notice; the HCFA on its own initiative sought a single national medical code for use in Medicare and Medicaid reimbursements; and the AMA did not coerce the HCFA to choose one code over others or to accept the AMA's royalty-free license to use the CPT. Brown Decl., ¶¶ 3, 6, 9. As a result, this Court finds that Agreement between the AMA and the HCFA does not constitute copyright misuse and denies PMIC's Cross–Motion for Summary Judgment on this ground and grants the AMA's Motion for Summary Judgment.

In granting the AMA's Motion for Summary Judgment as to the declaratory judgment claim for relief,[5] this Court does not reach the viability of PMIC's new claims for relief set forth in the First Supplemental Complaint.

IT IS SO ORDERED.

---

right proprietors for the public performances of their works."); *Senza–Gel Corp. v. Seiffhart*, 803 F.2d 661, 668 (Fed.Cir.1986) (involving a patentee whom the court assumed was requiring others to lease a non-patented machine to obtain a license to use a patent. Patentee failed to provide evidence that the machine was covered by the same patent, as alleged, and the court therefore construed the subject machine as unpatented and granted summary judgment against the patentee on the grounds of patent misuse); *Berlenbach v. Anderson and Thompson Ski Co., Inc.*, 329 F.2d 782, 784 (9th Cir.1964), *cert. denied*, 379 U.S. 830, 85 S.Ct. 60, 13 L.Ed.2d 39 (1964) (the court granted summary judgment on the patent misuse defense on the grounds that the patentee entered into a licensing agreement which also required the exclusive sales of non-patented items with patented items); *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 136–137, 89 S.Ct. 1562, 1583–84, 23 L.Ed.2d 129 (1969) (the court granted an injunction finding patent misuse by a patentee who required payment of royalties whether or not a sale or the intended use involved a patented product).

5. The AMA's and PMIC's motions for summary judgment were filed prior to the filing of the First Supplemental Complaint which stated eight new claims for relief.